### NEFF v. WILLMOTT, ROBERTS & LOONEY et al.

No. 23699. Feb. 5, 1935.

John Barry and William Neff, for plaintiff in error.

R. J. Roberts and Joseph C. Looney, for defendants in error.

WELCH, J. This is an appeal from the district court of Seminole county. Plaintiff in error, L. E. Neff, was defendant below. Defendants in error, Willmott, Roberts & Looney, were plaintiffs in the trial court. The parties will be referred to herein as plaintiffs and defendant, as they appeared in the trial court.

In July, 1925, plaintiffs obtained an attorneys' contract from Robert Hully, Winey Harjo, and Alex Harjo, to represent the three above-named persons, who were Indians, in an effort to recover certain inherited interests in real estate. The contract of employment provided for a contingent fee of 50 per cent. of any recovery. In June, 1926, and before the plaintiffs had instituted any action in behalf of the Indian clients, the defendant, L. E. Neff, obtained a contract of employment as attorney from Winey Harjo and Robert Hully, and in December of the same year said defendant obtained a similar contract from Alex Harjo. The contracts taken by the defendant related to the same subject-matter as did plaintiffs' contract with the same Indians.

It is conceded by the parties that the making of the contracts of employment with the defendant, Neff, operated in law and in fact as a discharge by the Indians of plaintiffs as their attorneys. Plaintiffs immediately thereupon ceased activities in representing the Indians. The defendant went forward as attorney and successfully prosecuted to judgment the Indians' claims to certain interests in the land, and on the 29th day of July, 1927, obtained a judgment in the district court of Seminole county establishing the rights of the Indians to certain undivided interests in the land. The Indians sought a greater interest than was awarded them in the district court, and perfected an appeal to this court. The judgment of the trial court was sustained by this court in Jarvis v. Goforth, 147 Okla. 168, 296 P. 477. Shortly after obtaining his contracts of employment in 1926, defendant Neff had also obtained conveyances of an

interest in the lands involved, so that final judgment fixing the interests inherited by the Indians operated to fix defendant's title to the interests earned by his efforts in behalf of the Indian clients under his contracts.

On January 4, 1932, plaintiffs commenced this suit against the defendant for damages. The nature of plaintiffs' action is best shown by the following quotation from their brief:

"This action is brought by Willmott, Roberts & Looney upon the theory that,

"'One who maliciously or without justifiable cause induces a person to break his contract with another will be liable to the latter for the damages resulting from such breach.' Cooley on Torts (3d Ed.) vol. 2, p. 592.

"'It is an actionable tort for one to maliciously interfere with a contract between two parties and induce one of them to break the contract, to the injury of the other.'

"'Malice,' in the sense used herein, means a wrongful act done intentionally, without just cause or excuse.' Prairie Oil & Gas Co. v. Kinney, 79 Okla. 206, 192 P. 586; Schonwald v. Ragains, 32 Okla. 223, 122 P. 203."

The cause was tried to the court and resulted in a judgment in favor of plaintiffs in the sum of $10,000 against the defendant, L. E. Neff. Neff appealed.

Numerous questions are urged for reversal, among them being the defendant's plea of the statute of limitation. The view we have taken on that question makes it unnecessary for a further statement of facts, or for us to decide the other questions.

It is the defendant's contention that under the admitted facts any tort or violation of plaintiffs' rights that is claimed against him, if any there was, was committed in 1926, when the Indian clients contracted with him and discharged plaintiffs as their attorneys, and when plaintiffs thereupon ceased their activities in the matter by reason of defendant's activities in representation of the same clients. He points out that this action was not commenced against him for this alleged wrong until January 4, 1932, which was more than five years after the accrual of plaintiff's alleged cause of action. As a statutory bar to the action he relies upon section 101, O. S. 1931, which provides in part as follows:

"Civil actions, other than for the recovery of real property, can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards. * * * 3rd. Within two years. * * * An action for injury to the rights of another, not arising on contract, and not hereinafter enumerated."

It is the plaintiffs' contention that their cause of action did not accrue against the defendant at the time of their discharge as attorneys for the Indians in 1926, because at that time the Indians' rights in the property had not been established; that their right of payment under their contract with the Indians was contingent upon the Indians' recovering some interests in the land, and that it would at that time have been impossible to determine the amount of damages sustained. They assert that the Indians' rights in the property did not become finally fixed and established by judicial decree until the entire litigation was ended by decision in this court, which was in 1931, and plaintiffs assert that they were not entitled to anything under their contract with the Indians until the Indians' rights had become finally fixed and determined and they had recovered something.

For that reason plaintiffs contend that the statute of limitation did not commence to run on their claim against the defendant until 1931. However true that might be as to plaintiffs' rights to collect on the contract from the clients, a different question is here presented where they seek to proceed against defendant, Neff, for his tort in interfering with their contract with their clients, and inducing the breaking of their contract. This is purely an action in tort for the breach of a duty imposed by law, and the wrongful invasion of plaintiffs' legal rights. There was no contractual relation between plaintiffs and defendant.

No contention is made in this case that the above-quoted portion of section 101, O. S. 1931, relating to limitation of actions is not applicable. The controversy centers upon the question as to when the statute commenced to run or when the plaintiffs' cause of action accrued. This rule is stated in 37 C. J. p. 810:

"The accrual of the cause of action means the right to institute and maintain a suit; and whenever one person may sue another a cause of action has accrued and the statute begins to run, but not until that time. So, whether at law or in equity, the cause of action arises when and only when, the aggrieved has the right to apply to the proper tribunals for relief. * * * The true test therefore to determine when a cause has

accrued is to ascertain the time when plaintiff could have first maintained his action to a successful result."

The alleged tort in this case was the defendant's action in procuring plaintiffs' clients, the Indians, to discharge plaintiffs as attorneys, thus interfering with their contractual relations with their clients, preventing them from fulfilling the contract. This interference was fully accomplished in December, 1926. No contention is made that the defendant at any later date interfered in any way with any of the plaintiffs' rights. At any time within two years after December, 1926, plaintiffs could have had recourse to the courts for damages for the tort.

But plaintiffs insist that it was necessary, or that they had the right, to wait until final settlement of the clients' right and title to the land, in order to make proper proof of the damages caused to them by defendant's wrong. Thus plaintiffs argue for the rule that a person deprived of a right or injured by tort may wait for an advantageous time to show the extent of his damages before bringing suit, without encountering the bar of the statute of limitation. Or perhaps to better state it, the rule contended for is that in a tort action the running of the statute of limitation starts, not with the commission of the tort, but from the day when the full extent of the damages is easiest ascertained. We are cited to no authority sustaining such a rule and we know of none.

If in one action based upon tort the plaintiff might freely wait beyond the period of the statute of limitations to commence suit, in order to more easily make full proof of all damages, why should not a similar rule apply in other tort actions?

In suits for damages for personal injury resulting from negligence, or assault and battery, or suits for damages to property, the plaintiff might in some cases much prefer to wait beyond the limitation period to file suit, in order to be better able to prove his damage, or in order to be able to show greater damage. Would any one argue that he could do so? And could he thereby move forward for a period of years the time when his cause of action should be said to have accrued? We think not.

The plaintiffs, while suing for damages resulting from a tort committed in 1926, suggest that their cause of action against Neff never accrued until the clients finally recovered substantial interests in the land in 1931. Surely that is not correct. To so hold would be to say that Neff's liability to respond in damages for his wrong would depend on whether the clients recovered their land or not. To so hold and follow to a logical conclusion would be to say that if he had been careless or negligent or incompetent as an attorney, and had thereby lost the clients their inheritance, then no matter how meritorious was their cause in the beginning, or how grievously he had wronged plaintiffs by his original tort, his own carelessness or negligence freed him of liability to plaintiffs. We cannot follow that contention of plaintiffs, for we think the true rule must be that if for his tort the defendant was liable in damages to the plaintiff, then plaintiffs' right to sue for damages for that wrong did not depend on whether the Indian clients, with defendant as their counsel, should recover their inheritance.

The plaintiffs suggest the absence of any measure of damages in 1926, but we are not impressed with the force of that suggestion as touching the issue here. If plaintiffs could wait to sue defendant until after defendant had successfully waged his contest to recover the inheritance for the Indian clients, and then if plaintiffs could measure their damage by the sum earned by defendant pursuant to his contract, such delay and such measurement would in this case result in benefit to plaintiffs, because here the sum so earned and collected by defendant was substantial. The plaintiffs' desire to so delay action and to so measure damages could not control the time when plaintiffs' cause of action legally accrued. This is not an action to recover of defendant the fee or part of the fee earned by him under his contract, but an action for damages for wrong done by him to the plaintiffs.

The rule relating to the measure of damages in tort actions, such as we have here, is aptly stated in 62 C. J. 1160, as follows:

"In an action in tort for inducing the nonperformance of a contract, the measure of damages is the loss of advantages, either of property or of personal benefit which, but for the interference, plaintiff would have been able to attain or enjoy, and, in jurisdictions where allowed, exemplary damages may be awarded in a proper case."

That one is not compelled to await the ultimate outcome under the terms of the contract is well illustrated in Trustees of Horton's Estate v. Sherwin, 63 Okla. 259, 164 P. 469, wherein the court said:

"The measure of damages for the breach of an obligation arising from contract, except where otherwise expressly provided, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which in the ordinary course of things would be likely to result therefrom."

It is true that in the Sherwin Case, supra, the court is dealing with the parties to a contract, but we see no distinction in that case and this, in so far as the application of the rule regarding the measure of damages is concerned.

Assuming that plaintiffs had a valid contract with the Indian clients, then plaintiffs had the right to hold such contract without wrongful interference by defendant, Neff, and to proceed thereon to a recovery of the inheritance of the clients. Any tortious interference with that right by Neff might well render him liable in damages. But Neff could not commit such a tort, and wrongfully take the clients for his own, and then escape liability by losing for the clients their inheritance which the plaintiffs might have recovered for them had their contract not been molested. If it were true that one can tortiously injure another in his contract rights in the manner alleged in this case and if the injured party must sit by and await the ultimate and final results of the injury, as such results might be disclosed by the performance of a new contract with the tort-feasor, before he could maintain a suit for damages, or before any cause of action would accrue, then there would indeed be a wrong without a remedy. In many such cases the final results, in the absence of the performance of the contract, may never be known, or such results might be far different from the results which would then have followed, had the tort not been committed.

We think it clear that whatever cause of action the plaintiffs had against defendant, Neff, accrued in 1926, and by the two-year statute of limitation above quoted, was barred long before this action was commenced in 1932, and that we have no course but to sustain defendant's right to rely on the statutory bar.

In the various state and federal courts many actions have been held barred by statutes of limitations when the bar of such a statute was clear. Our laws make such a bar absolute. Note the following partial quotation from our statutes:

"Civil actions can only be commenced within the periods prescribed in this article," etc. (98, O. S. 1931.)

And "Actions * * * can only be brought within the periods hereinafter prescribed * * * and at no time thereafter." (99, O. S. 1931.)

And in section 101, O. S. 1931, the applicable section here:

"Civil actions, other than for the recovery of real property, can only be brought within the following periods * * * and not afterwards."

And again in section 108, O. S. 1931, it is provided in part:

"When a right of action is barred by the provisions of any statute, it shall be unavailable either as a cause of action or ground of defense."

While it may be true that in their beginning, statutes of limitations were not received and looked upon favorably by the courts (17 R. C. L. 664), and in some jurisdictions in the past the defense of the statute of limitations has not been treated with the same favor as ordinary defenses (17 R. C. L. 668), yet undoubtedly the rule is now well recognized to be that:

"As a general rule, however, statutes of limitations are now considered as wise and beneficent in their purpose and tendency, and as furnishing a defense as meritorious as any other and one to which all men are entitled as a right." (17 R. C. L. 668.)

See, also, Anaconda Mining Co. v. Saile (Mont.) 39 P. 909; Lilly Brackett Co. v. Sonnemann (Cal.) 106 P. 715.

In Middlekamp v. Bessemer Irrigating Ditch Co., 103 P. 280, the Supreme Court of Colorado sustained the bar of the statute of limitation, and in the opinion cited many authorities to sustain the general rule stated in the language of that court to be:

"As a general rule, it is held a cause of action for a wrongful act, whether negligent or willful, or for the breach of a contract or duty, accrues immediately upon the happening of the wrongful act or the breach, even though the actual damages resulting therefrom may not accrue until some time afterwards, and the statute, therefore, begins to run upon the occurrence of the act or the breach complained of, and not from the time of the damage resulting therefrom."

In Walker v. Bowman, 27 Okla. 172, 111 P. 319, this court, speaking through Chief Justice Dunn, used this apt language:

"A cause of action accrues from the time the right to sue for the breach attaches." (Citing cases.)

It was contended in that case that plaintiff's cause of action did not accrue until final damages had resulted, but the court used this language:

"Also, in such a case where the petition alleges the breach of duty and also special and consequential damages, the breach of the duty, and not the consequential damage, is the cause of action." (Citing authority.)

In Oklahoma Farm Mortgage Co. v. Jordan, 67 Okla. 69, 168 P. 1029, this court sustained the bar of the statute of limitation, and, speaking through Justice Rainey, said:

"This case * * * is in accord with the general rule that a cause of action accrues for a breach of duty immediately upon the happening of the breach, although the actual damage resulting therefrom may not be discovered until some time afterwards." (Citing cases.)

It is to be noted that there is here no element of concealment or lack of knowledge of the action of Mr. Neff. At the time he contracted with the clients, or quite soon thereafter, the plaintiffs knew of his action in that regard. Plaintiffs also had complete knowledge when Mr. Neff appeared in court as attorney for the Indian clients presenting their claims of inheritance. The plaintiffs were attorneys in the same suit for other parties and knew all of the proceedings of the trial, and of the rendition of judgment in favor of the Indian clients represented by Neff in 1927. By that judgment the Indian clients recovered all of their inherited interest in the land, which interest was definitely and correctly fixed, and that judgment was affirmed on appeal to this court. The appeal from that judgment was taken by the Indian clients themselves, who sought a greater interest by such appeal. That judgment was not appealed from or in any manner attacked by any adverse party or claimants. So that if the plaintiffs' cause of action against Neff did not accrue until adjudication of the rights of the Indian clients, that determination was had in 1927, and after that date the plaintiffs' action against Neff was long since barred prior to commencement in 1932 of the present action.

Having concluded that the plaintiffs' cause of action is barred by the statute of limitations, judgment is reversed and the cause is remanded, with instructions to the trial court to render judgment for the defendant, Neff.

McNEILL, C. J., OSBORN, V. C. J., and RILEY and BAYLESS, JJ., concur. BUSBY and PHELPS, JJ., dissent. CORN, J., absent. GIBSON, J., passes.

BUSBY, J. (dissenting). I dissent from the majority opinion herein. I shall not burden the record with a restatement of the facts, but will address myself to what I believe is the practical effect of the majority holding.

According to my interpretation, it is to say that if Attorney Neff sent a "runner" to the litigants involved, who had theretofore contracted with Willmott & Roberts to represent them, and he then obtained a second attorney's contract, that this was in effect a discharge by the litigants of the plaintiffs as their attorneys; also that: "This is purely an action in tort for the breach of a duty imposed by law, and the wrongful invasion of plaintiffs' legal rights. There was no contractual relation between plaintiff and defendant." Also: "The controversy centers upon the question as to when the statute commenced to run or when the plaintiffs' cause of action accrued."

The rule is then announced that the cause of action arose at the date of the signing of the second attorney's (Neff's) contract, and that the cause of action was barred within two years thereafter.

It is my view that the statute of limitations did not begin to run until February 10, 1931, when the cause was finally decided, or until April 22, 1931, when the sums out of which the fee was to be paid as a contingent fee were tendered into court by the oil companies and that, therefore, plaintiffs' suit was filed within proper time.

I believe the right to recover in this case is based upon the rule laid down in Wood on Limitations, pp. 643-4, sec. 119a (7), "Contract of Employment":

"Where an attorney contracted to render services for a contingent fee and was displaced before recovery, limitations did not begin to run against his right of action until a recovery had been had by the client, so that the amount of the attorney's compensation could be ascertained. Limitations do not begin to run on a contract for personal services, theretofore performed and thereafter to be rendered, until it is terminated."

In the case of Cornelius et al. v. Standard Royalties Co., 131 Okla. 112, 267 P. 838, this court held:

"The general rule is the statute of limitation begins to run when cause of action ac-

crues, and the true test to determine when the cause of action accrues is to ascertain the time when the plaintiff could first maintain his action to a successful result."

See, also, Broadwell v. Board of County Commissioners, 88 Okla. 147, 211 P. 1040; National Bank of Claremore v. Jefferies et. al., 126 Okla. 283, 259 P. 260.

I believe the correct rule applicable to the facts in this case was stated in Joyce v. Miami County Nat. Bank, 90 Kan. 745, 136 P. 232:

"The right of the attorney to compensation being contingent on collection, no cause of action arose in his favor until the collection was made, and the statute of limitations did not begin to run against his claim for fees until that time."

In the case of White v. American Law Book Co., 106 Okla. 166, 233 P. 426, we said:

"While a client has the right to terminate his relationship with his attorney at any time, where an attorney is discharged by the client, or is otherwise wrongfully prevented from performing the professional duties for which he was employed, without fault on the part of the attorney, the latter is entitled to compensation, even though the arrangement was for a contingent fee, provided the contingency has taken place."

In the case of Duniway v. Wiley et al., 85 Ore. 86, 166 P. 45, it was said:

"Where an attorney, pursuant to his contract to contest assessments for paving in the city of Portland for a contingent fee of a third saved property owners on the original amount charged against their property, brought suit and obtained decree setting aside the first assessment, which decree was entered June 28, 1907, and, under Portland Charter of 1903, secs. 400, 401, the city had the right to make a reassessment of the cost of the improvement within ten years of the passage of the resolution of intention for the making of the original work, the statute of limitations began to run against the attorney's claim for compensation against his clients April 3, 1913, when the city's time for reassessment expired, and did not begin to run on rendition of the decree."

See, also, Wood on Limitations, sec. 121, pp. 678-679:

"There are instances of special contracts with attorneys, where their fee is made contingent upon the collection of a demand; and in such cases, of course, the statute does not attach upon the entry of judgment, but only when the judgment is collected. In such case his fee, being exigible until the money is collected, does not begin to run from the date of the judgment, but from the time when the money is collected; and, if the money is collected at different periods, perhaps the statute attaches to each sum collected, at the time of its collection. * * * The theory of these cases is that the services are rendered upon an entire contract, so that a right of action does not accrue until the entry of final judgment: and if a special contract is shown to have existed as to compensation, and the time and mode thereof, of course, that will control as to the time when the statute attaches."

See, also, note in 83 A. S. R. at page 164:

"Construction and Effect of Contracts—Recovery by Attorney.—The contract of an attorney to carry on or defend a suit is an entire contract: Eliot v. Lawton, 7 Allen (Mass.) 274, 83 Am. Dec. 683; Underwood v. Lewis (1894) 2 Q. B. 306; and the period of limitation runs only from the termination of the suit."

As I view it, the rule laid down by the majority opinion herein will have the practical effect of rewarding the unethical lawyer who takes a contract with prospective litigants in the face of a prior contract with attorneys who are investigating and making preparation to file suit. For example, a litigant goes to Lawyer A., enters into a contract with him to file suit for damages. Lawyer A. enters upon a period of investigation to ascertain the prospective recovery for the litigant. During this period of investigation, Lawyer B. sends a "runner" to the prospective litigant, and, in the face of knowledge of the prior contract, obtains a subsequent contract from the litigant. Under the majority opinion, as I view it, this terminates the contract of Lawyer A. Lawyer B. files suit, the case runs the course of the various courts, including the Supreme Court of this state, and thereby more than two years elapse from the date of the second attorney's contract. Lawyer B. recovers a substantial amount for damages, but Lawyer A. has no remedy whatsoever. Had he filed suit at the time Lawyer B. obtained the second contract, his recovery or the amount thereof would have been doubtful for the reason that the measure of damages could not be ascertained, and, further, because the contingency upon which a cause of action might be based had not yet taken place. As long as Lawyer B. was litigating the case, it would be problematical as to whether or in what amount the litigant could or would recover. The litigant's recovery would be one of the con-

tingencies on which Lawyer A.'s cause of action would be based. The adoption of such a rule, to my mind, is unjust and inequitable to the bar of this state, and places honorable lawyers at the mercy of those who, without compunction, would take contracts in the face of prior employment by the litigant. It would tend to encourage a violation of contracts. For these reasons, I respectfully dissent.

PHELPS, J., concurs in this dissent.