**EMPLOYERS LIABILITY ASSURANCE CORPORATION, Ltd., an English corporation, Appellant,**

v.

**F. Carroll FREEMAN, Appellee.**

**No. 5116.**

United States Court of Appeals
Tenth Circuit.

Dec. 27, 1955.

Rex H. Holden, Oklahoma City, Okl., for appellant.

Delmer L. Stagner, Oklahoma City, Okl. (Erwin Alpern, Oklahoma City, Okl., on the brief), for appellee.

Before BRATTON, MURRAH and PICKETT, Circuit Judges.

BRATTON, Circuit Judge.

F. Carroll Freeman instituted this action against Employers Liability Assurance Corporation. The purpose of the action was to recover damages for the wrongful interference with the contractual relations between F. Carroll Freeman and Chester G. Freeman. Despite the identity in surnames, there was no kinship between the two Freemans. For convenience, F. Carroll Freeman will be referred to as Carroll; Chester G. Freeman as Chester; and Employers Liability Assurance Corporation as the insurance carrier. The cause was tried to a jury. The jury returned a verdict for Carroll; judgment was entered upon the

verdict; and the insurance carrier appealed.

■ Asserted error is predicated upon the action of the trial court in denying the motion of the insurance carrier for a directed verdict. The motion was made at the conclusion of all the evidence and the ground thereof was that the insurance carrier merely acted for the protection of its legal rights and therefore was not liable in damages for the termination of the contractual relation of attorney and client existing between Carroll and Chester. It is the well settled general rule of law in Oklahoma that if one employs fair means and acts in good faith and with justification for the protection of his legal rights, he is not liable in damages even though his acts and conduct constitute interference with the contractual rights of another; that on the other hand, if one maliciously interferes with a contract between two parties and induces one of them to break that contract to the injury of the other party, the injured party may maintain an action in tort against the wrongdoer; and that if the procurement of the breach is intentional and without excuse, it is malicious. Schonwald v. Ragains, 32 Okl. 223, 122 P. 203, 39 L.R.A.,N.S., 854; Prairie Oil & Gas Co. v. Kinney, 79 Okl. 206, 192 P. 586; Bliss v. Holmes, 156 Okl. 40, 9 P.2d 718; National Life & Accident Insurance Co. v. Wallace, 162 Okl. 174, 21 P.2d 492. And these general principles have application to the interference of the contractual relation between an attorney and his client. Klauder v. Cregar, 327 Pa. 1, 192 A. 667; Keels v. Powell, 207 S.C. 97, 34 S.E.2d 482; cf. Neff v. Willmott, Roberts & Looney, 170 Okl. 460, 41 P.2d 86.

■ It is axiomatic that when the jury has observed the witnesses while testifying, has appraised their credibility, has determined the weight to be given to their testimony, has drawn reasonable inferences from the facts established, has resolved conflicts, and has reached its ultimate conclusion in the form of a general verdict, an appellate court will take that view of the evidence most favorable to the prevailing party and will uphold the verdict against a challenge of this kind if there is substantial evidence to support it. Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L. Ed. 916; Loew's, Inc., v. Cinema Amusements, Inc., 10 Cir., 210 F.2d 86, certiorari denied 347 U.S. 976, 74 S.Ct. 787, 98 L.Ed. 1115.

■ Viewed in the light most favorable to the prevailing party, there was evidence which tended to establish these facts. Carroll was an attorney engaged in the practice of law. Chester was an employee of a construction company whose business was within the purview of the Workmen's Compensation Act of the state, 85 O.S.1951 § 1 et seq. The insurance carrier issued to the construction company a policy of workmen's compensation and employer's liability insurance, and Chester was within its coverage. Chester sustained serious personal injury in the course of his employment. It was believed that negligence on the part of a third party was the proximate cause of the injury. Chester consulted Carroll. Carroll advised Chester that it appeared he had a cause of action against the third party. Chester employed Carroll generally as his attorney in connection with the accident and resulting injury. Carroll's compensation was to be a per cent of the amount recovered. Carroll made some investigation and arranged for pictures taken on the premises where the accident occurred. He then called on the telephone the agent in charge of the claim department of the insurance carrier and told him that he had been retained by Chester. The two of them arranged for a conference the next morning to discuss the possibility of arranging to have compensation benefits paid to Chester even though it was decided to proceed against the third party. The agent in charge of the claim department told Carroll that a claim adjuster was working on the case and that he would like for the claim adjuster to take part in the conference. That afternoon the claim adjuster went to the hospital and talked with Chester. With knowledge that Carroll had been retained, the claim adjuster told Chester

that he did not need a lawyer; that the insurance carrier would take care of everything, including doctor's bills, nurses' bills, hospital bills, and car payments; and that it would pay him $25 per week while he was sick. The claim adjuster further told Chester that there was $12,500 for him at the state capitol. And he further told Chester that "if we got mixed up in a lawsuit, these payments would have to be stopped". Through a relative of Chester, Carroll was summoned to the hospital. When he entered Chester's room the claim adjuster was there. Chester said "Well, I guess I won't need you after all, Carroll. Mr. Chance tells me that I don't need a lawyer, that his company can handle everything for me, and that it won't cost me a dime." Carroll stated that the claim adjuster knew Chester was entitled to the benefits under the compensation law and that the insurance carrier was obligated to pay him benefits regardless of who represented him. In reply to that statement, the claim adjuster said "Well, we are not going to." Actuated by the statements made by the claim adjuster, and without any dissatisfaction with Carroll, Chester terminated Carroll's employment. The agent in charge of the claim department of the insurance carrier directed the claim adjuster to see a representative of the construction company and solicit his help in getting Chester to employ the attorney for the insurance carrier. The claim adjuster told Chester that the attorney for the insurance carrier would like to talk to him and inquired whether it would be all right. The claim adjuster brought the attorney to the hospital and he was employed to institute suit against the third party. It was agreed that his compensation would be a per cent of the amount recovered. Chester and the attorney first met when the attorney came to the hospital. Acting through the attorney thus employed, Chester instituted a suit for damages against the third party tort-feasor, and while the case was on trial it was settled for $45,000. Considered in its entirety, the evidence together with the inferences fairly to be drawn from it was abundantly sufficient to take the case to the jury on the pivotal issue whether in the making of the several crucial statements to Chester, the insurance carrier acted in good faith for the protection of its legal rights or without excuse interfered with the contractual relation of attorney and client existing between Carroll and Chester, to the injury of Carroll; and therefore the motion for a directed verdict was properly denied.

 Complaint is made that the court gave to the jury an instruction as follows:

"The defendant in its case had a right to protect its own interests under such workmen's compensation policy and to take any lawful steps to see that its interests were protected. The defendant, however, did not have the right intentionally to interfere with plaintiff's employment by Chester Freeman, nor intentionally without just cause or excuse to cause Chester Freeman to discharge plaintiff as his attorney, or to cause him to employ an attorney selected by the defendant."

It is argued that the insurance carrier had the right to interfere with Carroll's contract of employment if the insurance carrier was acting for the protection of its own legal rights. The instruction must be considered as a whole, and it must also be considered in connection with all of the other instructions given to the jury. The instruction concerned itself with the right of the insurance carrier to protect its own legal rights under the policy of insurance. At the outset of the instruction, the jury was charged in clear and unmistakable language that the insurance carrier had the right in law to protect its own interests under the policy. And by the subsequent portion of the instruction, the jury was charged in effect that while the insurance carrier had the right to protect its own interests under the policy, it did not have the right in law intentionally and without just cause or excuse to interfere with Carroll's employment, to cause his discharge, or to further the employment of another attorney selected by the insur-

ance carrier. In respect to both of its features, the instruction was a correct statement of applicable principles of law and therefore is not open to the criticism directed against it.

■■ The further complaint is that the court erred in giving to the jury an instruction in this language:

"It is actionable wrong for one to interfere maliciously with a contract between two parties and thereby induce one of such parties to break that contract to the injury of the other and 'to maliciously' as used means a wrongful act done intentionally without just cause or excuse, and in this connection you are instructed that there is no evidence in this case of any facts which would constitute such a just cause or excuse."

The substance of the argument in support of the contention is that the instruction amounted to an instructed verdict against the insurance carrier in that the jury was charged that it was actionable wrong for the insurance carrier to interfere with the contract of professional employment between Carroll and Chester without just cause or excuse and was further charged that the evidence failed to show just cause or excuse. As previously said, the evidence together with the inferences fairly to be drawn therefrom presented for the jury the issue whether in the making of the several pivotal statements to Chester, the insurance carrier acted in good faith and with justification for the protection of its own legal rights under the policy of insurance or intentionally and without just cause or excuse wrongfully interfered with the contractual relation of attorney and client existing between Carroll and Chester. Therefore, detached from the rest of the instruction, that part of the particular instruction to the effect that there was no evidence in the case of facts which would constitute just cause or excuse is open to criticism. But the instructions must be considered as a whole. And when the instructions are considered in that manner, it is apparent that the court submitted to the jury the deter-minative issue of fact in a manner which the jury must have understood. In view of the overwhelming preponderance of the evidence tending clearly to show an aggravated case of wrongful interference with the contractual relationship existing between Carroll and Chester, we are persuaded that the technical incorrectness in the particular instruction under consideration constituted harmless error which did not affect the final action of the jury in returning the verdict for Carroll. And a harmless error of that kind does not lay any sustainable basis for disturbing the judgment on appeal. Johnson v. Chesapeake and Ohio Railway Co., 7 Cir., 227 F.2d 858.

■ The giving of an additional or supplemental instruction after completion of the giving of the formal instructions is challenged. The additional instruction was couched in this language:

"I think, counsel, I will make this additional statement in my instructions. I want both of you to attend carefully. That is this, that the defendant did have a legal right to refuse to pay until a court required the defendant to. I don't see that in the exercise of that right it furnished any just cause or excuse and I instruct you that it would not furnish any just cause or excuse for them inducing the injured man to discharge the plaintiff, if you find that did happen from the evidence."

The criticism of the instruction proceeds upon the view that it was contradictory within itself and that it contradicted the instruction last discussed herein. While the language used was perhaps less clear than might have been desired, it is manifest that the court endeavored to charge the jury that while legally the insurance carrier had the right in law to refuse to make payment of benefits under its policy of insurance until required by a court to do so, the exercise of such right could not be used as just cause or excuse for inducing Chester to discharge Carroll. We perceive no error in the instruction which was prejudicial to the insurance carrier.

■ · The further contention urged for reversal of the judgment is the refusal to give to the jury certain requested instructions. But the general instructions given by the court covered adequately the issues in the case, and where the material issues in a case have been comprehensively and correctly covered in the general instructions, it is not error to refuse requested instructions even though they be correct statements of law. Thiringer v. Barlow, 10 Cir., 205 F.2d 476; Jones v. Griffin, 10 Cir., 216 F.2d 885.

■ The final challenge to the judgment is that the court erred in its statements and comments to the jury. The so-called statements and comments were part of the instructions to the jury. The court did comment upon the evidence. The comments consisted of reviewing certain evidence and stating the views of the court in respect to it. But the court further instructed the jury in language too plain for misunderstanding that the jury was the judge of the facts, and that if the members did not agree with the court in respect to the facts it was their duty to disregard the views of the court and follow their own judgment in arriving at a verdict. It is not error for the court in its instructions to summarize and comment upon the evidence if it is made clear to the jury that the comments merely express the views of the court which are not binding upon the jury and that the jury is entirely free to determine the facts according to their own judgment. Vicksburg & Meridian Railroad Co. v. Putnam, 118 U.S. 545, 7 S.Ct. 1, 30 L.Ed. 257; Buchanan v. United States, 10 Cir., 15 F.2d 496.

The judgment is affirmed.

MURRAH, Circuit Judge (dissenting).

It is not easy to dissent from the affirmance of a judgment with which you are in complete sympathy and accord. And, it is even more difficult when the affirmance is based upon what I agree is a correct statement of the facts and applicable rule of law. I am constrained to dissent, however, because of my conviction that the court's instructions were lacking in essential clarity and consistency, and because they in effect peremptorily directed the jury to return a verdict for the plaintiff in a case which we all agree presented a jury question.

The jury was told that the "defendant had a right to protect its own interest under such workmen's compensation policy and to take any lawful steps to see that its interests were protected", but that it "did not have the right intentionally to interfere with plaintiff's employment by Chester Freeman, nor intentionally without just cause or excuse to cause Chester Freeman to discharge plaintiff as his attorney, or to cause him to employ an attorney selected by the defendant." And, the jury was further told that "It is actionable wrong for one to interfere maliciously with a contract between two parties and thereby induce one of such parties to break that contract to the injury of the other, and 'maliciously' as used means a wrongful act done intentionally without just cause or excuse, and in this connection you are instructed that there is no evidence in this case of any facts which would constitute such a just cause or excuse." The court went on to instruct the jury that if they "believed from the evidence that plaintiff was employed as an attorney by Chester Freeman to represent him in an action seeking recovery for him because of an accident and injuries suffered by him and that the defendant herein intentionally caused or induced the said Chester Freeman to terminate such employment and discharge plaintiff" and the plaintiff was injured thereby, it should find the issues in favor of the plaintiff.

And, elsewhere in the instructions, the jury was told that it was not ethical for the insurance company, after knowing that Chester Freeman had employed a lawyer, to contact him about his case and that they should have seen his lawyer. And then, after recalling the evidence, the court expressed the view that the insurance company, with knowledge that Chester Freeman had hired the plaintiff to represent him, "induced him to discharge the plaintiff for the purpose of getting him to hire their lawyer"; and

that "The evidence, it seems to me, could point to no other thing than that they talked to him for the purpose of getting him to hire their lawyer instead of a lawyer that he had, and if they did do that and if you find that they did do that and that induced him to discharge the plaintiff in this case, the plaintiff is entitled to recover, and as I have stated in the instructions, I find in the evidence no just cause or excuse for their attempting to cause Mr. Freeman to hire their lawyer. They had a right to have their lawyer protect their rights in that claim or any claim that Chester Freeman might have against a third party, but they had no right to induce him to discharge his lawyer so that their lawyer would represent him. * * * That is maybe somewhat technical to you but it is well understood by lawyers and it is for that reason that I commented so specifically to you."

After the bailiff was sworn to take charge of the jury, the court again made an additional statement as a part of his instructions, saying "the defendant did have a legal right to refuse to pay until a court required the defendant to. I don't see that in the exercise of that right it furnished any just cause or excuse and I instruct you that it would not furnish any just cause or excuse for them inducing the injured man to discharge the plaintiff, if you find that did happen from the evidence." This latter instruction was objected to on the ground that it "in effect told the jury that we, the defendant, had the legal right not to pay until they were ordered to pay by a court of competent jurisdiction and that if in exercising this legal right they induced Chester Freeman to discharge Carroll Freeman, that that would not be just cause or excuse." Whereupon the court answered, "It might be considered that way. It is not the way I meant it, but it might be considered that way."

The only rational interpretation I can place on these instructions, considered as a whole, is that while the defendant had a right to take any lawful steps to protect its interests under its workmen's compensation policy, including the right to refuse to pay compensation until a court required it to do so, the refusal to pay compensation in the exercise of that right furnished no cause or excuse to induce the injured man to discharge the plaintiff; and that in fact there was no evidence of any just cause or excuse.

In the extended colloquy between the court and counsel preparatory to instructions, the court stated that he was going to tell the jury "as a matter of law the evidence you have stated, if true, is not just cause or excuse." The court did so in effect instruct the jury and it was clearly peremptory. To me it is confusingly inconsistent to submit a factual issue to a jury and at the same time tell it that there is no evidence to support one side of the lawsuit. To be sure, it is the duty of the judge in federal courts "whenever he thinks it necessary, to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence, by drawing their attention to the parts of it which he thinks important; and he may express his opinion upon the facts, provided he makes it clear to the jury that all matters of fact are submitted to their determination." But a judge ought to exercise that power with great restraint and with the realization that " 'his lightest word or intimation is received with deference, and may prove controlling.' " Quercia v. United States, 289 U.S. 466, 53 S.Ct. 698, 699, 77 L.Ed. 1321. Above all, the court's expression of an opinion should not be "one-sided", and if there are two submissible theories, both of them should certainly be presented to the jury under instructions which will leave no doubt that the jury has a choice based upon supporting facts and applicable law.

We have stated the well settled rule in Oklahoma to the effect that "if one employs fair means and acts in good faith and with justification for the protection of his legal rights, he is not liable in damages even though his acts and conduct do constitute interference with the contractual rights of another." Oth-

erwise stated, "Procuring the breach of a contract in the exercise of an equal or superior right is acting with just cause or excuse, and is justification for what would otherwise be an actionable wrong." Knapp v. Penfield, 143 Misc. 132, 256 N.Y.S. 41, 44, quoted in National Life & Accident Ins. Co. v. Wallace, 162 Okl. 174, 21 P.2d 492.

The jury was instructed that if they believed from the evidence that the defendant intentionally caused or induced the said Chester Freeman to terminate such employment and discharge the plaintiff, the plaintiff was entitled to recover. But it was not given the other side of the lawsuit to the effect that if they believed from the evidence that the defendant employed fair means and acted in good faith with justification for the protection of its equal or superior rights under its workmen's compensation policy, it would not be liable, even though they invaded the plaintiff's contract with impunity. Instead, the jury was told more than once that there was no evidence of just cause or excuse. This instruction, although in the form of a comment upon the evidence, when considered in its context, amounted to a peremptory instruction to return a verdict for the plaintiff, and I would reverse it for a new trial.