**EXPERTISE, INC., d/b/a Champion Warehouse Distributors, Plaintiff-Appellant,**

v.

**AETNA FINANCE COMPANY, Defendant-Appellee.**

No. 83–1097.

United States Court of Appeals, Tenth Circuit.

Feb. 3, 1987.

Earl W. Wolfe, Tulsa, Okl., for plaintiff-appellant.

Robert E. Benson, Holland & Hart, Denver Colo. (Gregory A. Eurich and Ray N. Donley, were also on brief), for defendant-appellee.

Before HOLLOWAY, Chief Judge, McKAY, Circuit Judge, and KANE, District Judge.*

HOLLOWAY, Chief Judge.

This appeal involves the termination of a commercial financing arrangement between defendant Aetna Finance Company and plaintiff Expertise, Inc. Expertise filed this action asserting three claims for relief: (1) breach of contract; (2) failure to provide accounting; and (3) bad faith breach of contract. According to the pretrial order Expertise also sought recovery under the third claim for interference with prospective advantage.

At the close of the plaintiff's evidence, the trial court granted a directed verdict for the defendant on the claims of bad faith breach of contract and interference with prospective advantage, reasoning that all of the alleged misconduct either occurred more than two years before the filing of the complaint or resulted in no injury to the plaintiff. While expressing very serious doubt that the plaintiff had made a submissible case on the breach of contract claim, the court denied the defendant's motion for a directed verdict on that claim, noting that it was likely to grant the defendant a judgment n.o.v. if it was found liable by the jury. V R. 489–91. Finally, the parties agreed to settle the second claim for an accounting, and they subsequently executed a release from liability in consideration of the defendant's payment of $1,917.13 to the plaintiff. I R. 110–11; V R. 478, 483.

The defendant then presented evidence on the breach of contract theory, and again moved for a directed verdict. After denying the motion, the court submitted the breach of contract issue to the jury, which rendered a general verdict in favor of the plaintiff and awarded damages of $40,000. The court then sustained the defendant's motion for judgment notwithstanding the verdict, reasoning that any alleged oral contract was not sufficiently definite in its terms, and that the written contract gave the defendant the right to terminate the plaintiff's financing at any time or to decline to purchase individual contracts even if the customer under consideration had a favorable credit rating. I R. 106–07.

On appeal, the plaintiff strenuously argues that the court committed reversible error in granting the defendant's motions for a directed verdict and judgment n.o.v. on the first and third claims for breach of contract, bad faith breach of contract and interference with prospective advantage. We affirm.

I.

In April 1979, Mr. Donald Holder and Mrs. Linda Holder purchased all the stock

* The Honorable John L. Kane, Jr., of the District of Colorado, sitting by designation.

of Champion Warehouse Distributors, an Oklahoma corporation, using the company as a vehicle for their food distribution business. The company sold groceries in bulk to homeowners, providing them with additional options for service contracts and freezers to store the food. In October 1979 the plaintiff and defendant agreed in writing to a financial arrangement in which the defendant would have the option of purchasing contracts from the plaintiff. If the defendant purchased a contract, it would pay a specified percentage of the contract price to the plaintiff and place the remainder in a reserve fund designed to protect the defendant against losses incurred by the homeowners' nonpayment. Plaintiff's Exhibits 2–4; III R. 39–47; IV R. 265. The parties' relationship was to be governed by the Dealer Non-Recourse Agreement, which provided in part: "This Agreement does not obligate Dealer [plaintiff] to sell or Aetna [defendant] to purchase any Contract. The agreement may be terminated at any time by either party giving written notice to the other." Plaintiff's Exhibit 1, at 3 (¶ 13); III R. 41; IV R. 202, 204–05, 214–16.

Initially both parties profited from the business and expressed satisfaction with the financial arrangement. According to the plaintiff's evidence, Bob Campbell, the Regional Manager in charge of the defendant's various offices in Oklahoma and Louisiana, began to encourage Mr. Holder to expand his food distribution business into other Oklahoma cities having Aetna offices, such as Ardmore, Bartlesville, Del City, Enid, Ponca City and Stillwater. According to the plaintiff's evidence, such expansion would be rewarded with continued financing on increasingly better terms from the defendant. Shortly thereafter, the plaintiff opened branch offices in Bartlesville and Del City and began a franchise operation in Ardmore.[1] Some of the contracts obtained in those offices were purchased by the defendant.

By late January 1980, however, the defendant became disenchanted with the financing arrangement for reasons which were hotly disputed at trial.[2] As a result, the defendant allegedly began rejecting a greater percentage of customer contracts and insisting on a larger allocation of the contract price to the reserve funds. On February 6, 1980, the parties executed a new series of agreements which increased the allocation for reserves and shortened the period for payment on the service contracts. Plaintiff's Exhibits 5–7; III R. 96–99, 109; IV R. 205–06.

According to the plaintiff's evidence, the defendant continued to reject an increasing number of customer contracts until, finally, it instructed Mr. and Mrs. Holder that it would not purchase any more contracts offered by the plaintiff. Furthermore Mr. Holder paid Mr. Campbell an additional cash deposit for the reserves, the amount being strenuously disputed at trial.[3] On April 24, 1980, the Holders sold their stock in the plaintiff corporation to Leon Nash. By May 1, 1980, the corporation ceased doing business. I R. 31 (stipulated fact in pretrial order); Brief of Appellant at 9. Shortly thereafter,[4] the defendant allegedly

---

**1.** There was also evidence that Bob Campbell encouraged Don Holder to open franchises in St. Louis, Missouri, and Corpus Christi, Texas, promising that the defendant would provide the franchisees with financing. Holder did sign a franchise agreement for Corpus Christi on February 4, 1980, but the project was never carried out. Plaintiff's Exhibit 56; III R. 138–43.

**2.** According to the plaintiff's witnesses, the problems began when the plaintiff hired Jesse Valdez, who had formerly been employed by the defendant as a branch manager at one of its Tulsa offices. According to the defendant, however, the relationship soured when it started receiving complaints from purchasers of the service contracts and was unable to reach Mr. Holder, who was the plaintiff's president and majority shareholder.

**3.** The plaintiff presented evidence that Mr. Holder made two payments, one for $5000 on February 6 and another for $2500 on February 15. According to the defendant's evidence, however, Mr. Holder made only one payment of $2500.

**4.** The letters are not dated and the record is unclear regarding when the letters were sent. According to plaintiff's counsel, Mr. Durk Bailey testified that the letters were sent in May or June of 1980. Brief of Appellant at 24; IV R.

sent letters to the plaintiff's former customers, advising them that the plaintiff was no longer in business and that Imperial Foods in Tulsa would honor the plaintiff's service agreements. The letters also recommended Imperial Foods, described as a "very reliable company," for all of the "future food needs" of the plaintiff's former customers. Plaintiff's Exhibit 16.

## II.

At trial, plaintiff's counsel theorized that the defendant breached two oral agreements between Campbell and Holder. First, Campbell allegedly promised that the defendant would purchase some of the customer contracts if the plaintiff submitted all of its business to the defendant. Second, Campbell allegedly promised to finance additional contracts on increasingly better terms if the plaintiff expanded into Ardmore, Del City, Stillwater, Enid, Bartlesville and Ponca City.

At the close of the plaintiff's case and again at the close of all evidence, the defendant moved for a directed verdict on the breach of contract claim, arguing in part that Campbell's alleged promises did not "arise to the dignity of any alleged oral contract, and the written contracts are very clear that the finance company is not obligated to purchase any contract at any time." V R. 458–60, 516. Plaintiff's counsel conceded that the written agreement gave defendant the right to unilaterally reject any or all contracts for any reason, V R. 463–64, 466, 472–74, but argued that the oral agreement went into effect when the plaintiff opened offices in Ardmore, Del City and Bartlesville, V R. 469–70.

The court expressed considerable doubt regarding the sufficiency of evidence under the breach of contract theory, but reluctantly denied the motions for a directed verdict on this claim. After the jury rendered a verdict for the plaintiff, however, the court granted the defendant judgment notwithstanding the verdict, reasoning that the Dealer Non-Recourse Agreement of October 3, 1979 entitled the defendant to decline acceptance of any or all customer contracts offered by the plaintiff, that this option was not altered by the purported oral agreements, and that "[t]he purported oral agreement was indefinite as to duration, as well as being indefinite and incomplete in its terms, concerning the parties' respective obligations." I R. 106–07.

We think the order granting the defendant's motion for judgment n.o.v. on the breach of contract theory was not in error. As the plaintiff concedes, the Dealer Non-Recourse Agreement of October 3, 1979 entitled the defendant to decline purchase of any contract or terminate the financing agreement at any time by giving written notice to the plaintiff. Plaintiff's Exhibit 1, at 3 (¶ 13); IV R. 204–05. As a result, the threshold inquiry is whether the purported oral agreement was sufficiently certain in its terms for the parties to acquire legally enforceable obligations.

Under Oklahoma law, which disfavors voiding contracts for vagueness, an agreement is binding only if it is precise enough for a court to ascertain the existence of a breach and formulate a remedy. *Nash v. Buchanan*, 716 F.2d 766, 768 (10th Cir. 1983); *Firstul Mortgage Co. v. Osko*, 604 P.2d 150, 153 (Okla.Ct.App.1979); *see also* Okla.Stat. tit. 15, § 104 (1981). In the instant case, we feel that Campbell's alleged oral representations were too indefinite for the creation of an enforceable obligation on the defendant's part. According to Don Holder, Campbell stated:

> "I want to see you grow. I need your business, you need the business and I can take care of you. Don't worry about anything, I can totally take care of it." He said, "I can see to it that you get into

---

484–85 (statement of plaintiff's counsel). In fact, however, Bailey merely testified that Imperial Foods assisted the defendant after May 1980 in servicing the plaintiff's customers. IV R. 334. Bailey did not say when the letters were sent. Nonetheless, we note that Jesse Valdez testified

that he learned about the referrals to Imperial Foods in May, and we will therefore assume for purposes of this opinion that the letters were sent after May 17, 1980, as argued by the plaintiff. V R. 400–02.

other areas that I'm not over." I said, "Such as?" He said, "We need your help right now in Oklahoma City and in Ardmore." He said, "We can take this thing and branch it out statewide." I've got a friend in St. Louis who's got a Champion Warehouse Distributors running in St. Louis. I didn't own any part of it, all I did was help him set it up. I asked him about financing in St. Louis and he said he'd love to have it. He said, "Anywhere we have an Aetna office then that's where we want to go." I also asked him about, you know, other than like St. Louis and he said again, he said, "Anywhere you want to go."

III R. 68; *see also* III R. 64–66. Linda Holder also testified that Campbell said that he would give the plaintiff "better terms," such as "lower interest," if it opened the additional offices. IV R. 233–36. Jesse Valdez added that in late October or early November 1979, Campbell said that he would "like to see [the plaintiff] in other parts of the state" where the defendant's offices were located. IV R. 386–87.

Such statements are too indefinite for a court to determine the existence of a breach or to formulate an appropriate remedy. According to the plaintiff's own evidence, the parties did not agree on the duration of the agreement, whether the defendant could continue to decline particular contracts for any reason, what the "better terms" would consist of, or the number and location of offices that the plaintiff must open for the oral agreement to take effect. As a result, we agree with the district court's conclusion that the oral representations allegedly made by Campbell were too indefinite for the creation of an enforceable duty on the defendant's part. *See Firstul Mortgage Co. v. Osko*, 604 P.2d at 153.

We conclude that the court did not err in granting the defendant's motion for judgment notwithstanding the verdict on the plaintiff's first claim for breach of contract.

## III.

As noted, the plaintiff also claimed that the defendant was liable for bad faith breach of contract. Without deciding the availability of the theory in this type of case, in any event the plaintiff obviously must establish that a binding agreement has been breached to invoke this theory. *See Scivally v. Time Insurance Co.*, 724 F.2d 101, 103–04 (10th Cir.1983). Because we have held that the plaintiff failed to establish a breach of an enforceable agreement, we must also conclude that it failed to establish a *prima facie* case of bad faith breach of contract. Accordingly, we hold that the court did not err in granting the defendant's motion for a directed verdict on the claim of bad faith breach of contract. *See id.* at 103 (appellate court may affirm judgment if the record discloses another ground that supports it, although not one relied upon by the district court).

## IV.

Finally, the plaintiff sought recovery under a theory of tortious interference with prospective advantage. At the close of the plaintiff's evidence, defense counsel moved for a directed verdict, arguing that any tort claim would be barred by Oklahoma's two-year statute of limitations because the plaintiff admittedly ceased doing business by April 30, 1980,[5] and the complaint was filed on May 17, 1982. V R. 458–59; *see* Okla.Stat. tit. 12, § 95(3) (1981).

In response, plaintiff's counsel contended that Durk Bailey had testified that in May and June, 1980, the defendant sent letters to the plaintiff's customers advising them that the plaintiff corporation was no longer in business and that Imperial Foods would honor their service contracts and accommodate their future food needs. V R. 484. However, plaintiff's counsel conceded that there was no evidence that the plaintiff was still servicing its customers at that time or that any customer ceased doing business with the plaintiff or switched to Imperial Foods as a result of the letters.

---

5. I R. 31 (stipulated fact in pretrial order); Brief of Appellant at 9.

V R. 487–88. Accordingly, the court granted the defendant's motion for directed verdict on the third claim of tortious bad faith, reasoning that any misconduct by the defendant within the two-year period of limitations did not cause any damage to the plaintiff. V R. 489. We agree.

■ At the outset, the plaintiff argues that the statute of limitations defense was waived because it was not included in the defendant's answer. We disagree. It is true that a limitations defense is generally waived unless it is raised in the defendant's responsive pleading. Fed.R.Civ.P. 8(c). In this case, however, the limitations defense was not waived because it was included in the pretrial order. When an issue is set forth in a pretrial order, it is not necessary to amend previously filed pleadings. Unless modified as provided by Rule 16(e), the pretrial order is the controlling document for the trial. *See Allied Chemical Corp. v. Mackay*, 695 F.2d 854, 855–56 (5th Cir. 1983) (per curiam) (statute of limitations defense not waived, despite its omission in the defendant's pleadings, because it was raised in the pretrial order at "a pragmatically sufficient time" for the plaintiff to respond without prejudice); *Jenkins v. Carruth*, 583 F.Supp. 613, 615 (E.D.Tenn. 1982) (statute of limitations defense not waived because it was expressly asserted in the pretrial order and defendant's motions to dismiss), *aff'd without opinion*, 734 F.2d 14 (6th Cir.1984); *see also* 2A J. Moore & J. Lucas, *Federal Practice* ¶ 8.27[3], at 8–184–88 ("[w]here the court makes a pretrial order preserving an affirmative defense, the failure to plead the defense will not be a waiver"). *But cf. United States v. Indiana Bonding and Surety Co.*, 625 F.2d 26, 29 (5th Cir.1980) (holding that the statute of limitations defense was not properly preserved for appellate review, despite inclusion in the pretrial

order, because it was not affirmatively pled, mentioned in the defendant's proposed findings of fact and conclusions of law, and defendant failed to present evidence in support of limitations defense).

■ We also agree with the district court's conclusion that the defendant's only arguably tortious act within the two-year limitations period [6] was the sending of letters to the plaintiff's former customers,[7] and that there was no evidence of any damage to the plaintiff as a result of those letters. As noted, the absence of any such damage was conceded by the plaintiff's counsel during the bench conference preceding the directed verdict.

We conclude that the court did not err in granting the defendant's motion for a directed verdict on the plaintiff's third claim of tortious interference with prospective advantage.

AFFIRMED.

---

6. We note that both parties agree that Oklahoma's two-year statute of limitations is applicable. Brief of Appellant at 23; Brief of Aetna Finance Company, Defendant-Appellee at 14. We agree. Okla.Stat. tit. 12, § 95(3) (1981); *see Neff v. Willmott, Roberts & Looney*, 170 Okl. 460, 41 P.2d 86, 88–90 (1935).

7. We note that there was evidence that Bob Campbell claimed in March 1980 to have submitted a list of the plaintiff's customers to Imperial Foods. III R. 128–29. However, the complaint was filed more than two years after the list was allegedly sent.