**METRO OIL COMPANY, INC., an Oklahoma corporation, Plaintiff–Appellant,**

v.

**SUN REFINING AND MARKETING COMPANY, a Pennsylvania corporation, Defendant–Appellee.**

No. 91–6023.

United States Court of Appeals, Tenth Circuit.

June 24, 1991.

---

**502**

Clell I. Cunningham III, Jack S. Dawson, and Jennifer B. Miller of Miller, Dollarhide, Dawson & Shaw, Oklahoma City, Okl., for plaintiff-appellant.

Robin F. Fields and Dixie L. Coffey of McKinney, Stringer & Webster, P.C., Oklahoma City, Okl., for defendant-appellee.

Before ANDERSON, TACHA, and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

In this diversity case for breach of contract and tortious interference with a business relationship, both parties moved for summary judgment. The trial court granted summary judgment in favor of Sun Refining and Marketing Company (Appellee or Sun), and denied the motion of Metro Oil Company (Appellant or Metro). It is from this ruling that Metro now appeals.

Metro is a wholesale distributor of motor fuel. Metro has purchased fuel from Sun, a manufacturer of motor fuel, under a series of contracts, since 1977. The latest agreement entered into between Metro and Sun in 1987, entitled Distributor Branded Motor Fuel Agreement (Agreement), provided in pertinent part: that Sun could establish and change the terms under which Metro was to pay for the product; and that the Agreement was subject to and governed by the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq.* (PMPA).

In 1988, Sun became concerned about Metro's credit position. This concern was prompted by the failure of Metro to deliver mortgages promised for collateral to partially secure Metro's credit line and due to several past due invoices. Consequently, Sun placed Metro on a C.O.D. basis. Letter dated February 5, 1988. Thereafter, in a letter dated February 24, 1988, Metro advised Sun that its action of altering the credit terms and payment methods had "terminated the Distributor Agreement," and if Sun maintained its position for one more day Metro would lose its dealers. The letter further stated: "Sun has breached the Uniform Commercial Code covenant of good faith and fair dealing in its treatment of Metro." Sun responded by letter the next day, February 25, 1988, stating Sun had not terminated the Agreement and had been acting in good faith in "attempting to resolve a difficult credit situation with Metro." Sun further stated that its previous request for adequate assurance of Metro's ability to meet its future performance obligations had not been complied with. Moreover, the letter indicated the interim credit policy that Sun outlined for Metro had been fully satisfied by Sun, but again, Metro failed to comply. About ten days later, in a letter dated March 3, 1988,

Metro's counsel again wrote to Sun stating that Metro's position was that the modification of the payment terms imposed by Sun "had the effect of constructively terminating the Distributor Agreement," and notified Sun that "Metro has now lost its dealers." The letter further provided: "You [Sun] will be hearing from us in the very near future on a lawsuit under the Petroleum Marketing Practices Act and other claims which will probably exceed $2 million dollars." Sun responded in a letter dated March 17, 1988, that it had acted in good faith in accordance with the Agreement, and that despite its good faith efforts, Metro demanded an all or nothing resolution; threatened frivolous litigation; and generally failed to act in good faith. Apparently this was the last correspondence between the parties on this matter.

More than two years later, however, on March 19, 1990, Metro filed a complaint against Sun alleging breach of contract and tortious interference with a business relationship. Thereafter, Metro moved for summary judgment as to Sun's liability. Sun moved for summary judgment contending Metro's claims were barred by the applicable statutes of limitation.

The trial court granted Sun's motion concluding PMPA clearly applied to the Distributor Agreement, and therefore Metro's claim that Sun's breach of the Agreement resulted in the termination of the Agreement was barred by the one-year statute of limitations established for franchise terminations. Moreover, the court concluded Metro's claim of tortious interference was barred by the applicable two-year statute of limitations for tort claims under Oklahoma law.

Metro contends the trial court erred in ruling Metro's claim for breach of contract was barred by PMPA. Specifically, Metro argues the agreement was not *terminated* but *breached* by Sun, rendering PMPA inapplicable. Metro argues the Oklahoma five-year statute of limitations set forth in Okla.Stat. tit. 12, § 95 governs this controversy.

The Agreement between Metro and Sun expressly provides that it "is subject to and governed by the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq.* [PMPA] ... for purposes of expressing the grounds upon which this Agreement may be terminated."

Section 105 of PMPA provides:

If a franchisor fails to comply with the requirements of section 2802 or 2803 of this title, the franchisee may maintain a civil action against such franchisor[,] ... except that no such action may be maintained unless commenced one year after the later of—

(1) the date of termination of the franchise ... or

(2) the date the franchisor fails to comply with section 2802 or 2803 of this title.

15 U.S.C. § 2805(a).

■ The question we must address is whether Metro's action against Sun is based upon a termination as contemplated in PMPA. In considering the propriety of a grant or denial of a summary judgment, we apply the same standard as the district court. *Missouri Pacific R.R. v. Kansas Gas & Elec.,* 862 F.2d 796, 798 (10th Cir. 1988); Fed.R.Civ.P. 56(c). We examine the evidentiary material submitted by the parties to determine if there exists any genuine issue of material fact, and if none exists, whether the substantive law was correctly applied. *Setliff v. Memorial Hosp.,* 850 F.2d 1384, 1391–92 (10th Cir.1988); Fed.R.Civ.P. 56(c).

The evidence in this case can be summarized as follows: Sun changed the terms and conditions of payment by demanding cash on delivery due to Metro's failure to pay certain invoices; from that point, Metro alleged Sun had wrongfully terminated the contract (which Sun consistently denied); and in a final letter to Sun dated March 3, 1988, Metro informed Sun it would be instituting suit against Sun under PMPA.

Sun presented, inter alia, the following evidence: Metro's complaint alleging Sun caused "a termination of this relationship and expectancy" (referring to Metro's Agreement with Sun); prelitigation letters

from Metro's counsel clearly alleging Sun had wrongfully terminated the Agreement; and that the parties stopped doing business with each other as of March 1988.

Metro contends: (1) it is entitled to damages for Sun's breach of the Agreement; (2) the letters from its counsel were but "pre-litigation threats"; and (3) that since Sun did not *terminate* but *breached* the Agreement, PMPA is inapplicable.

Metro's argument is semantic. A breach of contract is normally defined as a failure, without legal excuse, to perform any promise that forms the whole or any part of a contract. The thrust of Metro's complaint and of the proof presented is that Sun breached the Agreement by altering the credit terms thereby making it impossible for Metro to perform. 15 U.S.C. § 2802(a) contains a prohibition against termination by the franchisor of any franchise prior to the conclusion of its term. Metro presented no facts showing the purpose of this action is to recover for something other than damages caused by the termination. This cause of action, therefore, was clearly governed by PMPA.

One of the purposes of a motion for summary judgment is to pierce the pleadings and to assess the proof in order to ascertain whether there exists a genuine need for trial. *See* Fed.R.Civ.P. 56, Advisory Committee Notes. It is clear from the complaint and the proof that the Agreement here was in fact terminated. The only issue at trial would be which party terminated the Agreement. If Sun terminated, the action would be time-barred by PMPA. If Metro terminated, this would be a defense for Sun. Under rules applicable to summary judgment, once Sun established its entitlement, Metro had the obligation to come forward with evidence, more than mere conclusory allegations, that the real purpose of its suit was to recover damages for something other than the termination of the Agreement. Metro has failed to come forward with such evidence.

■ Metro also complained Sun's actions tortiously interfered with Metro's business relationships with its dealers. The district court determined this was a tort claim, subject to Oklahoma's two-year statute of limitations applicable to such claims, and was therefore barred. Okla.Stat. tit. 12, § 95.

On appeal, Metro argues the statute of limitations did not commence until April 1988—the date when it actually suffered damages. Oklahoma law fails to support Metro's contention. Under Oklahoma case law, a cause of action accrues upon the date the tortious act, or the happening of the breach, and not the date of the resulting damage. *Neff v. Willmott, Roberts & Looney*, 170 Okl. 460, 41 P.2d 86 (1935). We also note the evidence before the district court when the summary judgment was heard showed Metro would lose its dealers on February 25, 1988, and in its own letter of March 3, 1988 Metro claimed it had in fact lost its dealers. Even assuming, arguendo, Metro was correct in its interpretation of Oklahoma law, the record establishes Metro incurred damage as early as March 3, 1988, thus this claim would still be time-barred. In a final effort, Metro points to an affidavit claiming it establishes a factual dispute as to when it was damaged. This affidavit states, in essence, that Metro's own letter stating it had lost its dealers on March 3, 1988 was inaccurate. A party cannot resist a motion for summary judgment by contradicting its own evidence thereby creating an issue of fact.

Thus, we find summary judgment was properly granted in favor of Sun. The judgment of the district court is AFFIRMED.