**TOWNE et al. v. MARTIN et al.**

No. 31836. Nov. 13, 1945.

Rehearing Denied Feb. 26, 1946.

*166 P. 2d 98.*

[redacted]

———

[redacted]

Frantz C. Conrad and A. L. Beckett, both of Oklahoma City, for plaintiffs in error.

Robinson & Shipp and V. P. Crowe, all of Oklahoma City, for defendants in error.

HURST, V. C. J. This is a suit for damages for malicious prosecution of a civil action commenced by the plaintiffs, L. J. Towne and Ram Morrison, against the defendants, C. M. Martin, V. V. Harris, E. B. Galloway, George C. Naden, Melton H. Ehrlich, and H. A. Newbill. From a judgment for the defendants, the plaintiffs appeal.

The history of the transactions herein involved extends back to 1907, when H. H. Kroeger secured a written contract from Apple and Franklin for oil leases upon 740 acres of land in Pontotoc county. Thereafter, C. M. Martin and Sadie L. Knotts purchased the land, and on April 4, 1913, Kroeger entered into a written contract with Martin and Knotts, known as the Martin-Kroeger contract, wherein Martin and Knotts became the owner of the surface and Kroeger became the owner of all oil and gas rights under the land "for a period of fifteen years from and after the date hereof, and as much longer thereafter as oil or gas is produced from said premises. And it is further agreed that all the parties of the first part shall receive five per cent of all oil produced and saved from wells on said lands and shall receive Fifty Dollars per annum from the sale of the products from each well producing gas only."

The interpretation of said contract has caused considerable difficulty. Was it a sale of royalty? Was it an oil and gas lease? When should it terminate? The trouble started on September 17, 1915, when Martin and Knotts executed an oil and gas lease upon the property to Walter H. Gant. Thereafter, on March 24, 1916, Kroeger filed suit No. 2877 in the district court of Pontotoc county against Martin, Knotts, and Gant for the cancellation of the Gant oil and gas lease, and to quiet Kroeger's title to his oil and gas rights. The defendants prevailed in the lower court, but upon appeal the case was reversed, this court holding that the Martin-Kroeger contract was valid and enforceable, and that it did not contain an implied covanant to develop, as in the case of an oil and gas lease, and the defendants therein were restrained from further interfering with Kroeger's title. See Kroeger v. Martin, 72 Okla. 198, 180 P. 955.

Thereafter, on September 22, 1927, and prior to the expiration of the 15-year period, Martin and others again sued Kroeger for the cancellation of said Martin-Kroeger contract. The action was dismissed without prejudice on October 26, 1927. On September 7, 1928, and after the expiration of the 15-year period mentioned in the Martin Kroeger contract, the grantees of Martin and Knotts brought another action against Kroeger and associates for the cancellation of said Martin-Kroeger contract in so far as it related to one particular 40-acre tract of said land. This relief was denied by the trial court, and the judgment was affirmed on appeal. See Galloway v. Kroeger, 169 Okla. 645, 34 P. 2d 250. It was found in said action that there was some production on the 740-acre tract, but no production on the 40 acres there involved. The court held:

"That the owner of a 40-acre tract of land, acquired subsequent to the execution of said lease covering said 40-acre tract is not entitled to the cancellation of said lease as to said 40-acre tract upon the theory that no oil or gas was being produced on said 40-acre tract at the end of said primary term of

15 years, in the absence of a showing of want of diligence subsequent to the end of said primary term of 15 years."

On May 23, 1936, Martin and Knotts in said cause No. 2877 filed an application for permission to sue Kroeger again for the cancellation of his said contract. This permission was denied.

Thereafter, on April 26, 1938, the defendants herein, Harris and his associates, including Martin, Knotts and others, brought another action in the district court of Pontotoc county against Towne and Morrison and others, including Kroeger, for the purpose of canceling said Martin-Kroeger contract on the entire 740-acre tract of land, except the 10-acre tracts upon which each producing oil or gas well had been drilled, in which it was alleged that the property had not been developed with due diligence. This action resulted adversely to the plaintiffs therein, who are the defendants herein. No appeal was prosecuted from that judgment. This last action is the one which the plaintiffs herein say was brought maliciously and without probable cause.

The plaintiffs herein rely upon the above history and upon the above legal proceeding in their pleadings and in their evidence herein. They also rely upon the development or lack of development of said land for oil and gas purposes. Some small production was developed in 1928, a few months prior to the expiration of said 15-year period. There has been very little production, and at times no production at all. The evidence shows that there was no production from December, 1929, to February, 1930, inclusive, and also from September, 1933, to May, 1935, inclusive.

The defendants herein contend that they had a right to bring their action for cancellation, and say that they had probable cause for so doing. Their contention is based upon the proposition that at any time after the expiration of the 15-year period when production ceased, the Martin-Kroeger contract thereupon terminated ipso facto,

or if it did not thus so terminate, the Martin-Kroeger contract then became subject to the rule of implied covenants to develop, and was subject to cancellation for want of diligence as to all parts which had not been developed.

In an action for malicious prosecution, there are five essential elements, (1) the bringing of an action, (2) its successful termination in favor of the plaintiffs, (3) want of probable cause, (4) malice, and (5) damages. It is admitted that the action was brought and that it successfully terminated in favor of the plaintiffs herein, but the defendants deny that there was any malice or want of probable cause in their action. Under the view we take of this case the entire matter hinges upon the question as to whether or not there was want of probable cause. It is argued by the plaintiffs that the defendants had no probable cause, in view of the two decisions of this court heretofore mentioned, and in view of the fact that there was actual production on parts of the 740-acre tract at the time of bringing said action.

An analysis of the two cited decisions heretofore rendered by this court shows the following: In the case of Kroeger v. Martin, based upon facts existing on March 24, 1916, when the case was filed, this court interpreted the Martin-Kroeger contract as meaning that "no implied covenant exists requiring the lands to be explored and developed with reasonable diligence, as is commonly required in case of an ordinary oil and gas lease." In the case of Galloway v. Kroeger, based upon facts existing on September 7, 1928, when the case was filed, and asking for the cancellation of a particular 40 acres of the tract, this court held that since there was production on some parts of the 740-acre tract, the Martin-Kroeger contract could not be canceled as to the particular 40-acre tract, "in the absence of a showing of want of diligence subsequent to the end of said primary term of 15 years." This statement, by inference at least, indicates that subsequent to the expiration of said 15-

year period there would be an implied covenant to fully develop.

Since it was held in the case of Martin v. Kroeger that the Martin-Kroeger contract, covering a 15-year period, did not carry with it an implied covenant to develop, it is argued by the plaintiff that the nature of the contract did not change at the end of 15 years, and that there is still no implied covenant to drill. The defendants, on the other hand, admit that they are bound by the decision during the 15-year period, or until April 4, 1928, but contend that after that date, Kroeger and his associates were bound by an implied covenant to develop. These facts, substantially alleged in the petition and amended petition, and substantially proved by the evidence in the action complained of, present some doubtful questions, which we think were proper to be litigated.

In Gray v. Abboud, 184 Okla. 331, 87 P. 2d 144, it was said:

"It has very aptly been stated that one who initiates civil proceedings against another has 'probable cause' for so doing if he reasonably believes in the existence of facts upon which his claim is based and reasonably believes that under such facts the claim may be valid at common law or under an existing statute. See Restatement of the Law, Torts, sec. 675, p. 446. Thus it follows that a reasonable belief in the possibility that his claims may be held valid is sufficient to give the prosecutor probable cause for instituting such proceedings."

The evidence relating to probable cause or want of probable cause consists substantially of documentary evidence, including contracts, court proceedings and records of oil and gas production on the property showing the dates and amounts of production and the parts of the property developed. There being no conflict in the evidence on the issue of probable cause, the question of whether this evidence showed probable cause was one of law for the court rather than one for the jury to pass upon. Champlin Refining Co. v. Le Force, 176 Okla. 48, 54 P. 2d 190.

We are of the opinion, and hold, that the plaintiffs in the suit complained of had probable cause for bringing the action, and it therefore follows that the other elements urged, such as malice and conspiracy, are immaterial. Southern Ice & Utilities Co. v. Bench, 179 Okla. 50, 64 P. 2d 668; 34 Am. Jur. 729.

The plaintiff complains that the court excluded proper evidence upon the question of conspiracy and admitted improper evidence relating to advice from counsel. But those alleged errors are immaterial in view of what we have said.

Before directing a verdict, the trial court permitted the defendant Martin to withdraw his motion for a directed verdict. Thereupon the plaintiffs herein dismissed their action without prejudice as to the defendant Martin. The plaintiffs herein complain that the court committed error in allowing Martin to withdraw his motion for a directed verdict after the court had announced his ruling, but cite no authorities sustaining such contention, and we know of none.

Affirmed.

GIBSON, C. J., and RILEY, OSBORN, WELCH, CORN, and DAVISON, JJ., concur.