THACKER v. WALTON



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:THACKER v. WALTON

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 THACKER v. WALTON
2021 OK CIV APP 5
491 P.3d 756
Case Number: 118301
Decided: 12/03/2020
Mandate Issued: 10/21/2021
DIVISION III
IN THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III
Cite as: 2021 OK CIV APP 5, 491 P.3d 756

 

KIRT THACKER, Plaintiff/Appellee,
v.
SCOTT WALTON, individually and in his official capacity, Defendant/Appellant,
and
JOHN SINGER, individually, Defendant/Appellant,
and
CHARLES ROGERS, individually, Defendant.

APPEAL FROM THE DISTRICT COURT OF

ROGERS COUNTY, OKLAHOMA

HONORABLE JEFFERSON D. SELLERS

AFFIRMED IN PART, REVERSED IN PART AND REMANDED

James W. Connor, Jr., Sidney D. Smith and Adam L. Wilson, RICHARDS & CONNOR, Tulsa, Oklahoma, for Appellant Walton,

Scott B. Wood, WOOD, PUHL & WOOD, P.L.L.C., Tulsa, Oklahoma, for Appellant Singer,

Brendan M. McHugh, Claremore, Oklahoma, and Dana Jim, Vinita, Oklahoma, for Appellee.

Trevor S. Pemberton, Judge:

I

¶1 Kirt Thacker ("Plaintiff," "Appellee" or "Thacker") filed his Petition against the three named Defendants, Scott Walton ("Walton"), John Singer ("Singer") and Charles Rogers ("Rogers")[1], on November 18, 2018, asserting claims for malicious prosecution, both state and federal, false light invasion of privacy, defamation (slander and libel), retaliation, abuse of process, civil conspiracy, breach of contract, breach of fiduciary duty, and violation of Thacker's state constitutional rights under article 2, § 7, due process, and § 30, unreasonable searches and seizures. Thacker filed a First Amended Petition shortly thereafter on December 13, 2018.

¶2 On August 16, 2019, the Rogers County District Court held a hearing to consider motions to dismiss[2] pursuant to the Oklahoma Citizens Participation Act ("OCPA"), 12 O.S. Supp. 2014 § 1430 et seq.[3] The district court determined prior to the first witness being called at the August 16th hearing that it would take judicial notice of what had been presented. The court then found the comments and statements of Walton involved matters of public concern and free speech; thus, the burden shifted to Thacker to "show, 'by clear and specific evidence a prima facie case for each essential element of the claim[s] in question.' Id. § 1434(C)." Southwest Orthopaedic Specialists, P.L.L.C. v. Allison, 2018 OK CIV APP 69, ¶7, 439 P.3d 430, 434.[4] 

¶3 The district court did not issue a decision after the hearing, and the motion to dismiss was deemed denied by operation of law. Title 12 O.S. Supp. 2014 § 1437 provides:

A. If a court does not rule on a motion to dismiss filed pursuant to Section 3 of the Oklahoma Citizens Participation Act in the time prescribed by Section 5 of the act [30 days], the motion shall be considered denied by operation of law and the moving party may appeal.

B. An appellate court shall expedite an appeal or other writ, whether interlocutory or not, from a trial court order on a motion to dismiss a legal action filed pursuant to Section 3 of this act or from a trial court's failure to rule on that motion in the time prescribed by Section 5 of this act.

12 O.S. § 1437(A)-(B) (emphasis added). The district court, by declining to issue an order after the August 16, 2019 hearing, put at issue in this appeal only the denial of the motion to dismiss pursuant to the OCPA.

¶4 Thacker's cause of action stems from accusations by Walton, Singer and Rogers that Thacker improperly and illegally using county property, such as a bulldozer, to modify a pond on property through which he ran his cattle operation. Thacker insisted he used the equipment on behalf of the county to address flooding issues on a nearby roadway and that addressing overflow at the pond was part of the flood control work.

¶5 Thacker was a County Commissioner for Rogers County, Oklahoma, serving from January 2007 to December 2014. He alleged Walton, the Rogers County Sheriff, as sheriff and in his individual capacity, Singer and Rogers conspired to maliciously prosecute him for the purported illegal use of county property, resulting in charges against Thacker for embezzlement of county property, embezzlement of equipment, materials and labor, 21 O.S. Supp. 2012 § 1451, and conspiracy to defraud Rogers County in violation of 21 O.S. 2011 § 424. November 13, 2017, Thacker entered an Alford plea to a misdemeanor. The felony charges and the second criminal complaint were dismissed as part of the plea agreement.

¶6 While running to retain his County Commissioner seat, Thacker lost in the primary in the summer of 2014. He attributed his loss to the cloud of these criminal accusations and a failed initiative petition, which Thacker believed was spearheaded by Walton and others.[5] 

 

II

 

¶7 Based on the reasoning provided in Southwest Orthopaedic Specialists, 2018 OK CIV APP 69, ¶5, 439 P.3d at 433 (quoting in part Krimbill v. Talarico, 2018 OK CIV APP 37, ¶4, 417 P.3d 1240, 1244), a de novo standard of review is required, to wit:

It is clear that the OCPA provides a new summary process/dismissal procedure in certain cases, however, and that, traditionally, Oklahoma appellate courts have reviewed decisions pursuant to such procedures by a de novo standard. The OCPA also requires dismissal if a plaintiff fails to show a prima facie case, and is hence similar to a motion for directed verdict. Directed verdict challenges also are reviewed de novo. Finally, Texas, which has an almost identical act, has adopted a de novo standard of review. Hence, we find a de novo standard indicated by existing precedent and persuasive authority, and we adopt that standard here (footnote omitted).

We will apply this standard in the current case. "Issues of law are reviewable by a de novo standard. An appellate court claims for itself plenary, independent and non-deferential authority to re-examine a trial court's legal rulings." Neil Acquisition, L.L.C. v. Wingrod Inv. Corp., 1996 OK 125, n.1, 932 P.2d 1100.

III

¶8 Once Walton and Singer demonstrated the OCPA applied,[6] the burden shifted to Thacker to show "by clear and specific evidence" the requirements of § 1434(C).[7] The OCPA does not define "clear and specific evidence," and as the appellate court noted in Krimbill v. Talarico, 2018 OK CIV APP 37, ¶14, 417 P.3d at 1246, the phrase "clear and specific evidence" "has not previously appeared in published Oklahoma appellate case law." However, this court will apply the clear and specific evidence standard in a manner based on the reasoning provided in Krimbill, which presumes the "definition of 'clear and specific evidence' in § 1434(C) is in harmony with the established standard for prima facie case." Krimbill, 2018 OK CIV APP 37, ¶15, 417 P.3d at 1246.[8] If Thacker establishes his claims in accord with § 1434(C), the next consideration to address would be whether Walton and Singer established by a preponderance of the evidence each essential element of a valid defense.

¶9 We deal first with Thacker's state malicious prosecution claim against both Walton and Singer.[9] 

The plaintiff in a malicious prosecution action has the burden of affirmatively proving five elements: (1) the bringing of the original action by the defendant; (2) its successful termination in plaintiff's favor; (3) want of probable cause to join the plaintiff; (4) malice, and (5) damages. Towne v. Martin, 196 Okl. 510, 166 P.2d 98 (1946).

Young v. First State Bank, Watonga, 1981 OK 53, 628 P.2d 707, 709.

¶10 Failure to establish a prima facie case for any one element of the malicious prosecution claim requires dismissal of Thacker's claim under the guidelines of § 1434(C). Thacker's malicious prosecution cause must be dismissed due to failure to establish the second element. The termination of Thacker's prosecution for the criminal cases relating to his use of county property to modify the pond did not end in his favor. To the contrary, Thacker entered an Alford plea. Effectively, Thacker pled guilty to a lesser, misdemeanor, offense. See Martin v. Phillips, 2018 OK 56, ¶¶13-15, 422 P.3d 143, 148;[10] Heck v. Humphrey, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 2372-73, 129 L.Ed.2d 383 (1994). We find the district court's denial of Appellants' motion to dismiss with respect to the state malicious prosecution claim was in error.

¶11 We next examine Thacker's abuse of process claim. "The elements of an abuse of process claim are (1) the improper use of the court's process (2) primarily for an ulterior or improper purpose (3) with resulting damage to the plaintiff asserting the misuse." McGinnity v. Kirk, 2015 OK 73, ¶64, 362 P.3d 186, 203-04. "The quintessence of abuse of process is 'not the wrongfulness of the prosecution, but some extortionate perversion of lawfully initiated process to illegitimate ends.'" Greenberg v. Wolfberg, 1994 OK 147, 890 P.2d 895, 905 (quoting Heck, 512 U.S. at 486 n.5).

¶12 The abuse of process Appellants allegedly committed against Thacker occurred in 2015, when criminal charges were initiated against him. The Oklahoma Supreme Court has determined an abuse of process claim accrues "when a plaintiff could have 'first maintained the cause to a successful result.'" Greenberg, 1994 OK 147, 890 P.2d at 898 (quoting Neff v. Willmott, Roberts & Looney, 1935 OK 119, 41 P.2d 86, 87). Under this rationale, the cause accrued no later than 2015, when the charges were brought against Thacker, not in 2017 when Thacker pleaded guilty to the misdemeanor charge. As a result, the statute of limitation for this claim expired in 2017, two years after it accrued, and the year before Thacker filed his Petition and First Amended Petition in 2018. Greenberg, 1994 OK 147, 890 P.2d at 898. Because Walton and Singer established by a preponderance of the evidence a valid defense, we find the district court's denial of Appellants' motion to dismiss with respect to Thacker's abuse of process claim was in error.

¶13 Thacker also alleges a false light claim against Walton for Walton's publicly critical evaluation of Thacker during a November 15, 2017 podcast.[11] The elements of a false light claim are:

"One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

(b) the actor had knowledge or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."

The Restatement's use of the language "knowledge or ... reckless disregard as to the falsity" reflects the view taken by the Supreme Court of the United States in Time, Inc. v. Hill, 385 U.S. 374, 389--90, 87 S.Ct. 534, 542--43, 17 L.Ed.2d 456, 467--68 (1967).

Colbert v. World Publ'g Co., 1987 OK 116, 747 P.2d 286, 290 (footnote omitted).

¶14 During the August 16, 2019 hearing, Thacker's counsel elaborated on which portions of the podcast were part of Thacker's false light claim. Of the approximately eleven examples given by Thacker's counsel, only the following comment by Walton appeared to give the trial court pause, as something possibly other than Walton's own opinion:

--witnessed with their own eyeballs. Anybody see all that equipment out there. I think there was three pieces of equipment at the time, a dozer, a fuel truck, and a trackhoe --

...

--working on his pond dam. The excuse for that or, you know, a letter was produced by an engineer, you know, this was -- this was water retention for a road that floods. I mean we've got a lot of places that flood. I mean in a monsoon this -- water gets on the road but this is not -- you know, the mission of that pond dam project was, you know, a water retention for his livestock I mean at the county's expense. I mean that's just -- I mean that's the way these guys roll.

¶15 Those comments relate to the embezzlement charges against Thacker. The record demonstrates Thacker's position throughout the underlying proceedings is that he was innocent of those charges and entered the Alford plea only to avoid additional expense and basically move on with his life. However, the November 13, 2017 Alford plea was, in effect, a guilty plea to the misdemeanor charge brought against Thacker. Martin v. Phillips, 2018 OK 56, ¶¶13-15, 422 P.3d at 148; Heck, 512 U.S. at 486-87. Thacker also indicated he entered the plea knowingly and willingly.

¶16 The language Walton used in the podcast, though disparaging of Thacker, did not upon the record presented meet the element of false light. Having spoken in the podcast within a day or two of Thacker's own plea regarding the events for which Walton accused Thacker, we do not find Walton had knowledge of the falsity of the statements he made, as Thacker's plea supported the truthfulness in Walton's statements made during the podcast. We find the district court erred in failing to dismiss this claim as well.

¶17 Thacker also alleges Walton defamed him, making slanderous statements about Thacker's conduct while serving as a county commissioner. Based on the timing of the Petition and First Amended Petition, the slander Thacker refers to must be confined to statements made after the enactment of the OCPA in November 2014.[12] For this reason and for purposes of this appeal, Thacker's slander claim will be examined as it relates to the statements Walton made during the podcast in November 2017.

To impose liability for defamatory falsehoods, a plaintiff generally must plead and prove (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either the actionability of the statement irrespective of special damage, or the existence of special damage caused by the publication. Restatement (Second) of Torts § 558 (1977). A plaintiff who is a public figure who complains of defamation must prove the further element of malice in the publication[.]

Sturgeon v. Retherford Publ'n, Inc., 1999 OK CIV APP 78, ¶10, 987 P.2d 1218, 1223.

¶18 In much the same manner as the false light claim addressed above, we find Thacker has not met the elements of his defamation claim. He cannot effectively demonstrate Walton made false statements concerning Thacker's actions after Thacker himself pled to a misdemeanor acknowledging the existence of evidence of the very behavior at issue. We find the district court erred in failing to dismiss Thacker's defamation-slander claim.

¶19 With respect to Thacker's civil conspiracy claim as it relates to the claims outlined above, we will not entertain the allegations of conspiracy when Thacker has been unable to support the underlying elements of the claims at issue. See, Gaylord Entertainment Co. v. Thompson, 1998 OK 30, 958 P.2d 128, 148 ("[C]ivil conspiracy itself does not create liability."). As a result, we find the district court erred in failing to dismiss Thacker's conspiracy claim as relates to Thacker's state law claims.

¶20 Thacker makes two state constitutional claims, arguing Walton violated art. 2, §§ 7 and 30, infringing on Thacker's substantive and procedural due process rights and conspiring to seize Thacker by means of "bogus prosecution." Based on the aforementioned podcast statements, we do not find Thacker can meet the elements of these claims after having pled to actions for which he was accused. The district court should have dismissed these claims as well and erred in not doing so.

IV

¶21 Thacker further asserts against Walton and Singer two claims under 42 U.S.C. Supp.1996 § 1983, for malicious prosecution and retaliation. Thus, we must consider whether the OCPA applies to these federal claims. While the Oklahoma Supreme Court has not yet spoken to this issue, we are led to the conclusion that the OCPA does not apply to Thacker's federal claims.

¶22 The OCPA's expedited dismissal procedure, if applied, would supplant or supplement Federal Rules allowing for early disposition of a case, namely Fed. R. Civ. P. 12(b)(6) and 56. The OCPA burden shifting format provided by 12 O.S. § 1434 and discussed in Southwest Orthopaedic Specialists, 2018 OK CIV APP 69, ¶7, 439 P.3d at 434, is unlike any other Oklahoma law and unlike any federal law. The early dismissal procedure set out in § 1434 works to expedite the dismissal of frivolous claims. As found by the Oklahoma Supreme Court, "Section 1434 creates a new defense to causes of action involving first amendment rights, which effectively provides immunity from suit and would act as a complete bar to [a] plaintiff's claim." Anagnost v. Tomecek, 2017 OK 7, ¶16, 390 P.3d 707, 711. Applying that rationale, and contrary to Appellant's position, the OCPA's special dismissal procedure is not akin to "the current summary judgment regime," as the former provides a defense, whereas the latter is a mere procedure. The OCPA's burden shifting, dismissal procedure places a heavier burden on Thacker than would federal summary judgment or dismissal-type procedures available to address Thacker's § 1983 claims. In addition, "Section 1438 of the OCPA allows the target of such lawsuits to recover damages[.]" Put simply, the OCPA special dismissal procedure, if applied to a § 1983 claim, would substantively affect the federal law. Id. at ¶17.

¶23 Relatedly, the United States Supreme Court reasoned as follows when it considered the application of a state's governmental tort claims notice procedure to a federal § 1983 claim:

No one disputes the general and unassailable proposition relied upon by the Wisconsin Supreme Court below that States may establish the rules of procedure governing litigation in their own courts. By the same token, however, where state courts entertain a federally created cause of action, the "federal right cannot be defeated by the forms of local practice." Brown v. Western R. Co. of Alabama, 338 U.S. 294, 296, 70 S.Ct. 105, 106, 94 L.Ed. 100 (1949). The question before us today, therefore, is essentially one of pre-emption: is the application of the State's notice-of-claim provision to § 1983 actions brought in state courts consistent with the goals of the federal civil rights laws, or does the enforcement of such a requirement instead "'stan[d] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress' "? Perez v. Campbell, 402 U.S. 637, 649, 91 S.Ct. 1704, 1711, 29 L.Ed.2d 233 (1971) (quoting Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)). Under the Supremacy Clause of the Federal Constitution, "[t]he relative importance to the State of its own law is not material when there is a conflict with a valid federal law," for "any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." Free v. Bland, 369 U.S. 663, 666, 82 S.Ct. 1089, 1092, 8 L.Ed.2d 180 (1962). Because the notice-of-claim statute at issue here conflicts in both its purpose and effects with the remedial objectives of § 1983, and because its enforcement in such actions will frequently and predictably produce different outcomes in § 1983 litigation based solely on whether the claim is asserted in state or federal court, we conclude that the state law is pre-empted when the § 1983 action is brought in a state court.

Felder v. Casey, 487 U.S. 131, 138, 108 S. Ct. 2302, 2306--07 (1988).

¶24 The reasoning applies here. For instance, as many federal courts have declined to apply OCPA-like special dismissal procedures,[13] our permission of its application to federal claims would "frequently and predictably produce different outcomes in § 1983 litigation based solely on whether the claim is asserted in state or federal court." As such, the procedure is necessarily preempted when a federal claim, such as a § 1983 action, is brought in a state court.

¶25 Absent definitive instruction otherwise, we find Walton and Singer cannot utilize the OCPA special dismissal framework to alter Thacker's burden applicable to his federal claims. As the only issue before us in this appeal is the district court's denial of the motion to dismiss pursuant to the OCPA, we do not find the status of these federal claims was affected by the district court's decision (by operation of law) below. In other words, these federal claims were not dismissed and are not being dismissed by virtue of this Opinion.[14] 

 

V

 

¶27 Upon the record presented, the Rogers County District Court order by operation of law denying the motion to dismiss pursuant to the OCPA is AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

SWINTON, V.C.J., and MITCHELL, P.J., concur.

FOOTNOTES

[1] Defendant, Charles Rogers, appealed the district court's decision rendered by operation of law. 12 O.S. Supp.2014 § 1437(A). However, on December 30, 2019, Thacker moved to dismiss Charles Rogers' appeal. The Oklahoma Supreme Court granted Thacker's motion to dismiss, finding the appeal lacked an appealable order. As a result, he is no longer an "Appellant" in this appeal, Case No. 118,301. "Appellants" for purposes of this Opinion are Scott Walton and John Singer.

[2] Scott Walton filed a motion to dismiss the petition on December 17, 2018 and a motion to dismiss the first amended petition on December 27, 2018. John Singer filed a motion to dismiss the first amended petition on January 22, 2019. Charles Rogers filed a motion to dismiss the petition on December 19, 2018 and a motion to dismiss the first amended petition on January 28, 2019.

[3] The Oklahoma Citizens Participation Act (OCPA), 12 O.S. Supp. 2014 § 1430 et seq., took effect on November 1, 2014. Most of the events at issue in the cause of action occurred prior to the enactment of the OCPA. However, on or about November 15, 2017, Walton participated in a podcast on TalkRadio1170 discussing with the radio moderator Thacker's activity, criminal charges and his plea agreement. The issues in this case relating to the OCPA stem from the November 2017 podcast and not events that predate the enactment of the OCPA.

[4] The OCPA contains several unusual procedures that have no precedent in Oklahoma law. In an OCPA proceeding, the initial burden is on the defendant seeking dismissal to show that the plaintiff's claim "is based on, relates to or is in response to the [defendant's] exercise of" (1) the right of free speech, (2) the right to petition, or (3) the right of association." 12 O.S. Supp. 2014 § 1434(B). The burden then shifts to the plaintiff to show, "by clear and specific evidence a prima facie case for each essential element of the claim in question." Id. § 1434(C). If § 1434(C) is satisfied, the Act states, the burden shifts back to the defendant to show "by a preponderance of the evidence" a defense to the plaintiff's claims. Id. § 1434(D).

Southwest Orthopaedic Specialists, 2018 OK CIV APP 69, ¶7, 439 P.3d at 434.

[5] Additional information regarding the initiative petition can be found within the Rogers County case file CJ-2014-465.

[6] Immediately prior to the first witness taking the stand at the August 16, 2019 hearing, the district court noted it made a preliminary finding that Walton's actions involved matters of public concern, including free speech, and the burden shifted to Thacker to establish his claims in accord with the requirements of 12 O.S. Supp.2014 § 1434(C).

[7] "C. The court shall not dismiss a legal action under this section if the party filing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question." 12 O.S. Supp.2014 § 1434(C).

[8] The first such issue is the requirement that a plaintiff establish "a prima facie case for each essential element of the claim in question" by "clear and specific evidence."

III. THE "PRIMA FACIE CASE" AND "CLEAR AND SPECIFIC EVIDENCE"

Once a defendant has shown that the Act applies, the burden shifts to the plaintiff to show "by clear and specific evidence" the requirements of § 1434(C). The Act does not define "clear and specific evidence," and that phrase has not previously appeared in published Oklahoma appellate case law.

A. Prima Facie Case Under the Act

Oklahoma jurisprudence does define prima facie case. See, e.g., Hill v. State, 1983 OK CR 161, ¶ 3, 672 P.2d 308, quoting Black's Law Dictionary, 4th Rev. Ed., 1968, and defining "prima facie case" [no italics in the original] as, "Such as will suffice until contradicted and overcome by other evidence. A case which has proceeded upon sufficient proof to that stage where it will support finding if evidence to contrary is disregarded." Because the Legislature would not have stated two contradictory standards in the same sentence, we presume that its definition of "clear and specific evidence" in § 1434(C) is in harmony with the established standard for prima facie case.

The Texas courts have recognized this issue, and reached the same conclusion regarding the TCPA. In In re Lipsky, 460 S.W.3d 579 (Tex. 2015), the Texas Supreme Court noted:

The statute ... requires not only "clear and specific evidence" but also a "prima facie case." In contrast to "clear and specific evidence," a "prima facie case" has a traditional legal meaning. It refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted.

Id. at 590.

We find such reasoning consistent with Oklahoma law. We hold that, even though the Oklahoma Act initially demands more information about a plaintiff's underlying claim by requiring a showing of a prima facie case, "the Act does not impose an elevated evidentiary standard or categorically reject circumstantial evidence." Id. at 591.

Krimbill, 2018 OK CIV APP 37, ¶¶13-17, 417 P.3d at 1246 (emphasis added, footnotes omitted).

[9] The federal claims are addressed in more detail below.

[10] The Oklahoma Supreme Court concluded an "Alford plea was a constitutionally valid plea of guilty":

The Court thus concluded that Alford's plea was a constitutionally valid plea of guilty. This is so because an Alford plea involves an admission of the government's ability to secure a conviction--i.e., an admission of legal guilt--even though the defendant professes his factual innocence. In the end, however, the effect is the same: the defendant has pleaded guilty. Thus, even though an Alford plea and a nolo contendere plea might appear similar in certain respects, courts nonetheless recognize that an Alford plea is a guilty plea accompanied by protestations of innocence.

...

Because we conclude that an Alford plea is a form of guilty plea, we have no difficulty concluding that Phillips's plea carries with it a guilty plea's preclusive effect. So long as Phillips's plea was both voluntary and reflected an intelligent choice among alternative options open to a defendant, it must be treated as any other guilty plea. Phillips does not assert that his plea was coerced or forced upon him in any way, and he admitted there was a factual basis for his conviction. Phillips's plea was therefore proper and could serve as an evidentiary basis for the district court presiding over the civil case against him to grant partial summary adjudication in favor of Martin.

Martin v. Phillips, 2018 OK 56, ¶¶13 and 15, 422 P.3d at 148-49 (footnotes omitted).

[11] The beginning of the podcast indicates two former Rogers County Commissioners accused of trying to defraud the county while in office entered pleas the previous day to misdemeanor charges for separate but related cases. The record indicates the podcast was recorded on or about November 15, 2017 and Thacker entered his Alford plea agreement on November 13, 2017. In any event, the podcast seems to have occurred a day or possibly two after the pleas were entered.

[12] See supra note 2.

[13] See Abbas v. Foreign Policy Group, L.L.C., 783 F.3d 1328, 1333 (D.C.Cir. 2015) ("The first issue before the Court is whether a federal court exercising diversity jurisdiction may apply the D.C. Anti--SLAPP Act's special motion to dismiss provision. The answer is no. ... A federal court must apply those Federal Rules instead of the D.C. Anti--SLAPP Act's special motion to dismiss provision."); La Liberte v. Reid, 966 F.3d 79, 88 (2d Cir. 2020) ("Accordingly, federal courts must apply Rules 12 and 56 instead of California's special motion to strike."); Klocke v. Watson, 936 F.3d 240, 245 (5th Cir. 2019) ("Because the TCPA's burden-shifting framework imposes additional requirements beyond those found in Rules 12 and 56 and answers the same question as those rules, the state law cannot apply in federal court."); Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., 956 F.3d 1228, 1237 (10th Cir. 2020) ("Nevertheless, we did say that it was "very much debatable" whether the New Mexico statute could operate alongside the Federal Rules without conflict. [Los Lobos Renewable Power L.L.C. v. Americulture, Inc., 885 F.3d 659,] 673 n.8."); Carbone v. Cable News Network, Inc., 910 F.3d 1345, 1357 (11th Cir. 2018) ("Because Rules 8, 12, and 56 are valid under the Rules Enabling Act and the Constitution and govern the same basic question as the Georgia anti-SLAPP statute, the motion-to-strike procedure created by that statute cannot apply in federal court.").

[14] Said another way, the federal claims remain subject to a dispositive motion, such as a motion for summary judgment.

 

 

THACKER v. WALTON
2021 OK CIV APP 5
491 P.3d 756
Case Number: 118301
Decided: 03/08/2021
DIVISION III
IN THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III

 

KIRT THACKER, Plaintiff/Appellee,
v.
SCOTT WALTON, individually and in his official capacity, Defendant/Appellant,
and
JOHN SINGER, individually, Defendant/Appellant,
and
CHARLES ROGERS, individually, Defendant.

ORDER

¶1 This matter comes before the Court for consideration of the parties' competing requests for attorney fees, Appellant Scott Walton's Motion for Appellate Costs, and Appellant John Singer's Motion for Appellate Costs. We previously determined the trial court should have dismissed pursuant to the Oklahoma Citizens Participation Act (OCPA) Thacker's state law claims, thereby reversing in part the trial court's denial of Walton's and Singer's motions to dismiss. As articulated in our Opinion, Thacker's federal claims are not subject to the OCPA, and therefore, we affirmed the trial court's denial of the appellants' motions to dismiss to the extent they sought dismissal of the federal claims. Each party now seeks an award of appeal-related attorney fees based on varying interpretations of the applicable fee statute, 12 O.S. § 1438, which provides:

A. If the court orders dismissal of a legal action under the Oklahoma Citizens Participation Act, the court shall award to the moving party:

1. Court costs, reasonable attorney fees and other expenses incurred in defending against the legal action as justice and equity may require;

and

2. Sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in the Oklahoma Citizens Participation Act.

A. If the court finds that a motion to dismiss filed under the Oklahoma Citizens Participation Act is frivolous or solely intended to delay, the court may award court costs and reasonable attorney fees to the responding party.

¶2 Walton and Singer argue § 1438(A)(1) mandates an award of attorney fees in their favor because they secured by virtue of our Opinion dismissal of Thacker's state law claims under the OCPA. Thacker refutes the contention. He asserts dismissal of some but not all claims was not a dismissal of a legal action as contemplated by the OCPA and also that an award of fees under § 1438(A)(1) is discretionary. As support for the latter contention, Thacker points to the language, "as justice and equity may require," which, according to Thacker's interpretation, means a court may opt not to award fees to a moving party even if the party's motion to dismiss a legal action under the OCPA is successful.

¶3 We first address whether or not fees are mandatory under § 1438(A)(1). This Court, in Steidley v. Community Newspaper Holdings, Inc., 2016 OK CIV APP 63, ¶ 19, 383 P.3d 780, 788 previously answered in the affirmative, holding:

Now, in the event the special motion to dismiss [filed pursuant to the OCPA] is granted, the claimant is responsible for mandatory attorney fees . . . .[T]he trial court must award such damages leaving only the appropriate amount of the award to the discretion of the trial court.

We hereby reaffirm that specific holding, which is further supported by the last antecedent rule, pursuant to which "a limited or restrictive clause contained in [a] statute is generally construed to refer to and limit and restrict the immediately preceding clause or last antecedent." Matter of Estate Tax Protest of Leake Estate, 1994 OK CIV APP 157, ¶ 13, 891 P.2d 1299, 1302-03. We note, "The rule is an aid to construction and will not be utilized where extension to a more remote antecedent is required." Id. The phrase in § 1438(A)(1), "as justice and equity may require," applies exclusively to the last antecedent, "other expenses incurred in defending against the legal action." The phrase does not convert 1438(A)(1) into a discretionary fee provision. A holding otherwise would render meaningless the following language in § 1438(A) mandating fees: "the court shall award to the moving party[.]" (Italics supplied).

¶4 We next address as a matter of first impression whether the mandatory fee provision applies when some claims are dismissed under the OCPA special procedure but other claims are not. Attorney fees must be awarded under 12 O.S. § 1438(A)(1) only when there has been a dismissal of a "legal action." Therefore, as indicated by the parties, the determination of whether Walton and Singer are entitled to an award of attorney fees now turns on the interpretation of "legal action"--more specifically, whether the term includes individual claims. The definitions section of the OCPA broadly defines "legal action" as "a lawsuit, cause of action, petition, complaint, cross-claim, counterclaim or any other judicial pleading or filing that requests legal or equitable relief." 12 O.S. § 1431(6); see also, Steidley v. Singer, 2017 OK 8, ¶ 5, 389 P.3d 1117, 1118. The definition is unclear about whether a single claim within a lawsuit containing multiple claims constitutes a legal action, and because the definition is susceptible to more than one reasonable interpretation, it must be subjected to rules of statutory interpretation. Odom v. Penske Truck Leasing Co., 2018 OK 23, ¶ 18, 415 P.3d 521, 528. We are bound to provide a construction that avoids absurd consequences, without violating legislative intent. Id. "The legislative intent must be ascertained from the whole act in light of its general purpose and objective considering relevant provisions together to give full force and effect to each." Id.

¶5 Notably, "legal action" is used in sections of the OCPA other than just the section addressing attorney fees. Perhaps most pertinent to our analysis, the phrase is also used in the section describing when dismissal is appropriate under the OCPA, to wit:

[O]n the motion of a party filed pursuant to Section 3 of this act, a court shall dismiss a legal action against the moving party if the moving party shows by a preponderance of the evidence that the legal action is based on, relates to or is in response to the party's exercise of . . . .

12 O.S. § 1434(B).

¶6 If we were to accept the proposition that "legal action" does not include separate claims within a lawsuit, a motion filed pursuant to the OCPA's special dismissal procedure would be appropriate only if all claims in the lawsuit could be subjected to the OCPA. That would lead to an absurd result. The fear of dismissal and related repercussions (e.g. an award of attorney fees) for filing a meritless claim as determined under the OCPA would cease to exist anytime a plaintiff includes in the petition, perhaps strategically, a claim not subject to the OCPA (e.g. a federal claim). Such an outcome would also circumvent the means (i.e. motions to dismiss) by which the legislature accomplished the purpose of the OCPA, which, in pertinent part, "is to encourage and safeguard the constitutional rights of persons 'to petition, speak freely, associate freely and otherwise participate in government to the maximum extent permitted by law[.]'" Steidley, 2017 OK 8, ¶ 4, 389 P.3d at 1118. If "legal action" as used in one section of the OCPA includes separate claims within a lawsuit, the phrase must mean the same within other sections, such as 12 O.S. § 1438(A). Such an interpretation gives full force and effect to each section, as required when construing legislative intent. Therefore, we find that "legal action" as used in 12 O.S. § 1438(A) includes, but is not limited to, individual claims contained in a lawsuit. Because Walton and Singer, the moving parties, secured dismissal of Thacker's state legal actions under the OCPA special procedure, they are entitled to recovery of their reasonable appeal-related attorney fees associated with the dismissal of the state law claims.

¶7 Next, we consider Thacker's distinct request for an award of attorney fees. Citing 12 O.S. § 1438(B), he contends fees should be awarded as a sanction against Walton and Singer because their quest for dismissal of Thacker's federal claims was purportedly frivolous. Although § 1438(B) allows a court to award fees if a motion to dismiss is deemed frivolous, we do not find the appellants' request for dismissal of Thacker's federal claims was frivolous, regardless of how frivolous is defined. The issue of whether Thacker's federal claims were subject to the OCPA dismissal procedure was one of first impression in Oklahoma. Walton and Singer's argument, while unsuccessful, was not asserted in bad faith or without any rational argument based in law or facts. Thacker's Motion for Appeal Related Attorney Fees is denied.

¶8 We last address the issue of costs. Walton and Singer argue 12 O.S. § 1438(A)(1) entitles them to recovery of all costs incurred on appeal. Thacker, relying on the same subsection, contends the appellants are not entitled to an award of any costs because they only partially prevailed on appeal. Section 1438 of the OCPA entitles a movant to court costs if the court orders dismissal of a legal action. The section does not address how appellate costs should be divided if, on appeal, the matter is affirmed in part and denied in part, as occurred here. That scenario is squarely addressed by 12 O.S. § 978.1, which makes clear "costs shall be equally divided between the parties" when an interlocutory order is reversed in part and affirmed in part. Section 978.1 controls the situation at hand. Therefore, the costs related to this appeal shall be equally divided.

¶9 For the reasons stated herein, this matter is remanded for the trial court to take the following actions related to the motions contemplated:

1. Determine and award the reasonable appeal-related attorney fees Scott Walton and John Singer incurred to prevail on the dismissal of Kirt Thacker's state law claims and

2. Determine and equally divide the appeal-related costs.

DONE BY ORDER OF THE COURT OF CIVIL APPEALS this 5th day of March, 2021.

/S/E. BAY MITCHELL, III
Presiding Judge






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1983 OK CR 161, 672 P.2d 308, HILL v. STATE
Discussed
Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1994 OK CIV APP 157, 891 P.2d 1299, 66 OBJ 1163, Estate Tax Protest of Leake Estate, Matter of
Discussed
 2016 OK CIV APP 63, 383 P.3d 780, STEIDLEY v. COMMUNITY NEWSPAPER HOLDINGS, INC.
Discussed
 2018 OK CIV APP 37, 417 P.3d 1240, KRIMBILL v. TALARICO
Discussed at Length
 2018 OK CIV APP 69, 439 P.3d 430, SOUTHWEST ORTHOPAEDIC SPECIALISTS v. ALLISON
Discussed at Length
 1999 OK CIV APP 78, 987 P.2d 1218, 70 OBJ 2490, Sturgeon v. Retherford Publications
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1987 OK 116, 747 P.2d 286, 58 OBJ 3303, Colbert v. World Pub. Co.
Discussed
 1994 OK 147, 890 P.2d 895, 65 OBJ 4220, Greenberg v. Wolfberg
Discussed at Length
 1935 OK 119, 41 P.2d 86, 170 Okla. 460, NEFF v. WILLMOTT
Discussed
 1945 OK 296, 166 P.2d 98, 196 Okla. 510, TOWNE v. MARTIN
Discussed
 1996 OK 125, 932 P.2d 1100, 67 OBJ 3566, Neil Acquisition, L.L.C. v. Wingrod Investment Corp.
Discussed
 2015 OK 73, 362 P.3d 186, McGINNITY v. KIRK
Discussed
 2017 OK 7, 390 P.3d 707, ANAGNOST v. TOMECEK
Discussed
 2017 OK 8, 389 P.3d 1117, STEIDLEY v. SINGER
Discussed at Length
 2018 OK 23, 415 P.3d 521, ODOM v. PENSKE TRUCK LEASING CO.
Discussed
 2018 OK 56, 422 P.3d 143, MARTIN v. PHILLIPS
Discussed at Length
 1981 OK 53, 628 P.2d 707, Young v. First State Bank, Watonga
Discussed
 1998 OK 30, 958 P.2d 128, 69 OBJ 1404, GAYLORD ENTERTAINMENT CO. v. THOMPSON
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 1430, Title - Purpose
Discussed
 12 O.S. 1431, Definitions
Cited
 12 O.S. 1434, Ruling on a Motion to Dismiss - Standard of Proof
Discussed at Length
 12 O.S. 1437, Effect of Failure of Trial Court to Timely Rule - Appeal
Discussed at Length
 12 O.S. 1438, Award of Attorney Fees, Costs, and Expenses
Discussed at Length
 12 O.S. 978.1, Recovery of Costs for Review of Certain Interlocutory Orders on Appeal or on Certiorari
Cited
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 1451, 21 O.S. 1451, Embezzlement Defined - Penalties
Cited
 21 O.S. 424, Punishment for Conspiracy Against State
Cited


 
 








 
 
 
 

 
 




 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA