ROBERTS v. BUSH
2023 OK CIV APP 32
Case Number: 121284
Decided: 08/10/2023
Mandate Issued: 09/21/2023
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III
Cite as: 2023 OK CIV APP 32, __ P.3d __

 
SEAN ROBERTS, Plaintiff/Appellant,
v.
CAROL BUSH, Defendant/Appellee.
APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA
HONORABLE DAMAN H. CANTRELL, TRIAL JUDGE
AFFIRMED
C. Scott Loftis, LOFTIS LAW FIRM, Ponca City, Oklahoma, for Plaintiff/Appellant,
Joel L. Wohlgemuth, Chad J. Kutmas, NORMAN WOHLGEMUTH, LLP, Tulsa, Oklahoma, for Defendant/Appellee.
THOMAS E. PRINCE, PRESIDING JUDGE:
¶1 Plaintiff/Appellant, Sean Roberts, was a candidate for Oklahoma Labor Commissioner during the 2022 election cycle. Defendant/Appellee, Carol Bush held a press conference on August 8, 2022, during which she asserted that "[a] judge found, 'the court is fearful that the minor children will suffer immediate and irreparable injury,' in a very strong statement against Roberts. This is based upon sworn affidavits by his previous wife . . . ." Bush further concluded that this made him "grossly unfit for higher office, or his current office for that matter." Eight days later, on August 16, Mr. Roberts filed the instant action and sought relief under a claim of slander per se. Ms. Bush filed a Motion to Dismiss on January 20, 2023, pursuant to the Oklahoma Citizens Participation Act. See , et seq. A hearing was held on April 6, 2023, and the Motion to Dismiss was granted by the trial court on April 17, 2023. Mr. Roberts has appealed that order. After reviewing the record, we find that Mr. Roberts was deficient in his duty to establish a prima facie case for slander and that the trial court did not commit error. We, therefore, affirm.
BACKGROUND
¶2 This appeal stems from a dispute between two former members of the Oklahoma House of Representatives. Ms. Bush had served for six years before retiring in November, 2022. During her time in office, Ms. Bush was elected House Chair for the bicameral Legislative Women's Caucus. In 2022, Mr. Roberts, also then a member of the Oklahoma House, became a candidate for the statewide office of Oklahoma Labor Commissioner. His official office in the Oklahoma House of Representative did not expire until January 2023. On August 8, 2022, approximately two weeks before the run-off primary election in the Republican Primary for Oklahoma Labor Commissioner, Ms. Bush held a press conference on behalf of the Legislative Women's Caucus, requesting that Mr. Roberts drop out of the race for Labor Commissioner. She also caused a Press Release to be published.
¶3 The Press Release issued by Ms. Bush included the following:

Denouncing Candidate's History of Abuse and Unsuitable Candidacy
OKLAHOMA CITY -- Rep. Carol Bush, House Chair of the Women's Caucus, and the following women of the legislature...[names are omitted]...declare Rep. Sean Roberts, candidate for Labor Commissioner, grossly unfit for higher office, or his current office for that matter.
"Rep. Roberts' past behavior of threats and controlling behavior towards his previous wife and minor kids are characteristics of someone who should not hold any office and are inexcusable." This is according to a joint statement of the undersigned.
A judge found, "the court is fearful that the minor children will suffer immediate and irreparable injury," in a very strong statement against Roberts. This is based upon sworn affidavits by his previous wife....
"We find it to be repugnant. The claims of emotional, physical, and psychological abuse are all disqualifiers for office." This in a continuation of the joint statement.

(emphasis added).
¶4 Ms. Bush argued that falsity or reckless disregard concerning the statements she made in the Press Release could not be shown because those statements were "based upon" the documents she submitted to the trial court on January 20, 2023, as exhibits to her Motion to Dismiss. Those documents show, in part, that Mr. Roberts and his ex-wife were divorced in the State of Tennessee during May, 2003. Various statements of alleged abuse were made by Mr. Roberts' ex-wife in a Complaint for Divorce filed during March, 2002, and in a Petition for Orders of Protection filed during November, 2002. Although the Tennessee court did not specifically find that Mr. Roberts committed acts of domestic abuse, at the divorce hearing during May, 2003, the court stated on the record:
You tell me that you cannot remember whether you physically assaulted her, but you can't tell me that you did not, so the Court has to consider that.
The Tennessee court specifically found that Mr. Roberts had harassed his wife and the court further found that both parties admitted calling each other vile, ugly names. On the other hand, the Tennessee court found that Mr. Roberts was a fit parent and granted him unsupervised parenting time with the his children.
¶5 In a subsequent filing in May 2012, approximately nine years later following the 2003 divorce, Mr. Roberts' ex-wife filed a Petition to modify the parenting time schedule with the minor children. That Petition primarily focused on the children's alleged desire, as teenagers, to not be required to spend extended amounts of time in Oklahoma with their father during the summer. The Petition included allegations that Mr. Roberts' living conditions were not appropriate, that one of the children wished to participate in extra-curricular activities in Tennessee during the summer, that Mr. Roberts' ex-wife had information that led her to believe that Mr. Roberts continued to use corporal punishment on the children, and that he allegedly yelled and cursed at the children. The record shows that, based upon those allegations, not the allegations of abuse from 2002, the Tennessee court issued a Temporary Emergency Injunction on June 11, 2012, which stated, in part, the following:
After reviewing the pending petition in this matter, the Court is fearful that the minor children will suffer immediate and irreparable injury before a hearing can be held to determine whether Father shall be allowed to exercise Summer Vacation with the minor children, and, if so, what terms and conditions will be placed on that parenting time.
(emphasis added). The appellate record does not include any documents to demonstrate the outcome of the 2012 Petition to Modify that had been filed in the Tennessee proceedings.
¶6 During the press conference on August 8, 2023, eleven years following the 2012 Motion to Modify proceedings and nineteen years following the 2003 divorce, Ms. Bush stated, inter alia, that:
This violent behavior has no place in politics, governance, or leadership. Not standing up and saying anything about this abuse sends a message that it is okay. And it's not okay.
Unfortunately, we continue to promote and elect abusers to leadership roles; national politicians, professional sports players, athletes, and local officials. It is time that we stand up against those who exhibit these violent behaviors.
Therefore, we're standing here today calling for Representative Roberts to drop out of the race for labor commissioner.
¶7 On August 16, 2022, eight days subsequent to the press conference of August 8, 2022, Mr. Roberts filed the instant action, seeking relief for slander per se. Ms. Bush filed a Motion to Dismiss pursuant to OCPA on January 20, 2023. The trial court held a hearing on April 6, 2023, and granted the Motion to Dismiss on April 17, 2023. This timely appeal followed.
STANDARD OF REVIEW
¶8 The issue of whether the trial court properly granted a Motion to Dismiss pursuant to the OCPA is reviewed de novo. Southwest Orthopaedic Specialists v. Allison, , ¶ 5, , 433. De novo review involves a plenary, independent, and non-deferential review of the legal rulings made by the trial court. Thacker v. Walton, , ¶ 7, 499 P.3d 1255, 1259.
ANALYSIS
¶9 In this accelerated appeal, Mr. Roberts included one issue at Exhibit "C" of his Petition in Error. The issue to be resolved by this Court is whether the trial court committed error when it granted Ms. Bush's Motion to Dismiss by utilizing the procedure for dismissal of a lawsuit set forth in the OCPA. We conclude that the trial court did not commit error and AFFIRM.
¶10 The purpose of the OCPA "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." . Mr. Roberts argued to the trial court that Ms. Bush's reliance on the OCPA was misplaced as it only provides protection for speech that is not prohibited by law. He claimed that slander is actionable per se if it falls within the first four sections of . He argued that the press conference held by Ms. Bush was not the exercise of lawful speech and, according to Mr. Roberts, the OCPA does not apply. Mr. Roberts claimed that the allegations of abuse were not supported by anything other than "one sided almost twenty year old pleadings filed by Mr. Robert's ex-wife in their divorce case where its [sic] common knowledge that divorce litigants play loose with the truth to try to gain an advantage in child custody and high dollar marital assets disputes." We disagree and find that the OCPA is applicable to this action.
¶11 The OCPA is applicable if a lawsuit is based on, or relates to, a party's exercise of the right of free speech. . The "exercise of the right of free speech" is defined as "a communication made in connection with a matter of public concern". (3). A "matter of public concern" means, among other things, "an issue related to" "the government" or "a public official or public figure". (7). Title , provides the standard of proof for analyzing whether an action should be dismissed under the OCPA.
¶12 Under § 1434, a party seeking dismissal of an action under the OCPA must demonstrate, by a preponderance of the evidence, that the action is based on the party's exercise of the right of free speech. . We find that element was satisfied in this case. Mr. Roberts was campaigning for a public office. Therefore, he was a public figure at the time that Ms. Bush held the Press Conference. Her comments about Mr. Roberts were a matter of public concern because his alleged acts of violence against his ex-wife were an issue related to him as a public figure and concerned his fitness for office. We find that the OCPA applies and that the action was based on Ms. Bush's exercise of the right of free speech.
¶13 Once the first element is satisfied under § 1434, the burden shifts to the non-movant to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." . A prima facie case is defined as "[s]uch as will suffice until contradicted and overcome by other evidence." Krimball v. Talarico, , ¶ 15, , 1246. The term "clear and specific evidence" is presumptively in harmony with the established standard for prima facie case. Id. The OCPA requires a court to consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based. . Therefore, "a petition, if pled to the minimum standard of notice pleading, may not provide sufficient "clear and specific evidence" for purposes of the OCPA. Krimball, supra., at ¶ 19.
¶14 Mr. Roberts' Petition alleges that Ms. Bush "falsely claimed that Mr. Roberts has committed acts of abuse and domestic violence against his ex-wife" as the basis for her request to have him drop out of the race for Oklahoma Labor Commissioner. Mr. Roberts alleged that Ms. Bush's statements at the press conference constituted slander per se and that she "acted with malice as she knew the statements were false or, in the alternative, made the statements about Mr. Roberts in reckless disregard as to the truth or falsity of said statements".
¶15 Because Mr. Roberts is a public figure, he must overcome a high burden of proof to maintain a claim for slander because the standards set forth in New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) are applicable. Miskovsky v. Oklahoma Pub. Co., , ¶ 9, , 590. The right to free speech is protected by the First Amendment to the United States Constitution. Id. In New York Times, the Court noted the "profound national commitment to the principle that debate on public issues should be uninhibited, robust and wide open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." Id. In order to prevail on his slander claim, Mr. Roberts must show that the defamatory falsehood was made with actual malice. Miskovsky, at ¶ 12. The New York Times Court "held that the Constitution demanded that malice be shown with 'convincing clarity'." Miskovsky, at ¶ 13. Actual malice requires evidence that Ms. Bush acted with knowledge that her statements were false, or with reckless disregard of whether they were false or not. Yates v. Gannett Co., , ¶ 17, , 77. The actual malice test is subjective. Luper v. Black Dispatch Pub. Co., , ¶ 19, , 1033. Proof of guilty knowledge prior to publication is required to demonstrate that First Amendment immunity does not apply. Id.
¶16 The appellate record demonstrates that the Petition filed by Mr. Roberts was not verified. Mr. Roberts also did not provide any affidavits or evidence in an attempt to establish how Ms. Bush's conduct constituted actual malice in response to the Motion to Dismiss. While a simple examination of the limited factual record available from the judicial proceedings in Tennessee shows that the press release presented the facts from the Tennessee proceedings in an inexact and arguably hyperbolic manner, the record does not demonstrate that the allegations made in the press release were false. For purposes of meeting the standard of malice under the New York Times standard, Mr. Roberts was obligated to present facts to demonstrate that the claims made by Ms. Bush in the Press Release were false or reckless. The record here only contains mere allegations of falsity or recklessness. Without more, Mr. Roberts was deficient in his duty to establish a prima facie case for slander.
¶19 We, therefore, find that Mr. Roberts did not satisfy his burden under to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." Accordingly, the Order Granting Motion to Dismiss is AFFIRMED.
CONCLUSION
¶18 For the reasons stated, the Order of the trial court is AFFIRMED.
MITCHELL, C.J., and BELL, J., concur.
FOOTNOTES
 Title 12 O.S. 1442.1, states, in pertinent part, that: "Slander is a false and unprivileged publication, other than libel, which:
***
3. Tends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade or business that has a natural tendency to lessen its profit."
 In Ghanam v. Does, 303 Mich.App. 522, 845 N.W.2d 128, the Court, quoting from the Supreme Court of the United States, also noted that: "At the heart of the First Amendment is the recognition of the fundamental importance of the free flow of ideas and opinions on matters of public interest and concern." In addition: "Given the need to protect uninhibited, robust, and wide-open debate, the law recognizes that freedom of expression requires 'breathing space' which 'is provided by a constitutional rule that allows public figures to recover for [slander] only when they can prove both that the statement was false and that the statement was made with the requisite level of culpability.'" Id., at 531.
 "The question whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law." Grogan v. KOKH, LLC, , ¶ 15, , 1029 (citation omitted).
 "Reckless disregard does not mean that the speaker merely failed to act with reasonably prudent conduct, but instead requires 'sufficient evidence to justify a conclusion that the defendant made the allegedly defamatory publication with a 'high degree of awareness' of the publication's probable falsity, or that the defendant 'entertained serious doubts as to the truth' of the publication made.'" Ghanam, at 532.
 As a result of our holding that Mr. Roberts did not satisfy his burden under , it is unnecessary to discuss the third element under the statute, i.e., whether the movant can establish "by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim."